UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL PIZZUTO<br><br>            Plaintiff,<br><br>vs.<br><br>AIRBORNE EXPRESS, INC., STEVEN CROSSKEN, JOSEPH HAMILTON, GREG SWEATT, AND ARTHUR LEVERIS,<br><br>            Defendants. | Civil Action No. 04-12492 GAO |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS:
1) COUNTS V, VI, VII, VIII AGAINST ALL
   DEFENDANTS, AND
2) ALL CLAIMS AGAINST DEFENDANTS
   GREG SWEATT AND ARTHUR LEVERIS**

Defendants Airborne Express, Inc. ("Airborne"), Joseph Hamilton, Steven Crossken, Greg Sweatt and Arthur Leveris, submit this Memorandum in Support of their Motion to Dismiss. The plaintiff, Paul Pizzuto, alleges in his Complaint that the defendants, his former employer and supervisors, discriminated and retaliated against him on the basis of an alleged handicap, and committed various other torts relating to his employment and termination.

While the defendants deny Pizzuto's claims and fully expect that all of such claims will eventually fail, there are certain claims in the Complaint that are presently unsustainable as a matter of law. First, Count VI alleges intentional infliction of emotional distress by the individual defendants relating to the plaintiff's employment.

Such a claim, however, is preempted by the Workers' Compensation Act, and must be dismissed as a matter of law.  Second, Counts V, VII and VIII are dependent upon the meaning of a collective bargaining agreement, and therefore, are preempted by Section 301 of the Labor Management Relations Act, and likewise, must be dismissed.  Third, the Complaint is devoid of any allegations that support any cause of action against defendants Sweatt and Leveris.

For the reasons stated herein and in the accompanying Motion, this Court should dismiss Counts V, VI, VII, and VIII, and dismiss all claims against defendants Sweatt and Leveris.

## PIZZUTO'S CLAIMS[1]

Paul Pizzuto was employed as a truck driver by Defendant Airborne Express, Inc. ("Airborne") from March 1990 to July 25, 2003.  (Complaint at ¶9.)  Pizzuto was supervised at various times by the individual defendants, Crossken, Hamilton, Sweatt and Leveris.  (Id. at ¶¶ 10-13.)

During Pizzuto's employment, Airborne was a "union shop" and Pizzuto was a member of the union.  (Id. at ¶¶ 20, 29, 42.)  There was a collective bargaining agreement between the union and Airborne (the "CBA").  (Id. at ¶ 50.)  A true and accurate copy of the CBA is attached to the accompanying Affidavit of Robert Stillman.[2]

---

[1] For the purposes of this Motion, the defendants and the Court are obliged to accept properly pleaded allegations as the appear in the Complaint.  That said, the defendants denies culpability with respect to the plaintiff's claims, and reserve the right to challenge all of the Complaint's allegations, as appropriate.
[2] The CBA is properly before this Court for consideration in connection with the Motion to Dismiss.  "When, as now, a complaint's factual allegations are expressly linked to--and admittedly dependent upon--a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under 12(b)(6)."  *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998).  The Complaint in this case alleges facts regarding, and is dependent upon, the CBA.  Further, the defendants do not anticipate that Pizzuto will challenge the authenticity of the CBA.

Pizzuto alleges that his former manager, defendant Crossken, gave improper warnings, directives, and discipline, and that he was harassed by Crossken. (Id. at ¶¶ 21, 24, 34, 35, 36.) In March 2003, defendant Hamilton replaced Crossken as manager of the facility in which Pizzuto worked. (Id. at ¶ 44.) Things "went well for several months" after Hamilton became Pizzuto's manager. (Id. at ¶ 45.)

On July 16, 2003, however, Hamilton told Pizzuto that he (Pizzuto) was "suffering from paranoia and that he was making threatening gestures and looks to supervisors." (Id. at ¶ 48.) Hamilton then sent Pizzuto to a lab for drug and alcohol testing, which was permitted under certain circumstances by the CBA. (Id. at ¶¶ 49-50.)

On July 25, 2003, Pizzuto was terminated after an incident involving Pizzuto driving his car up to the overhead door of Airborne's facility. (Id. at ¶ 55.) Pizzuto's manager, Hamilton, made the decision to terminate Pizzuto. (Id. at ¶ 59.) Contemporaneous documentation paraphrased in the Complaint shows Hamilton, "had an ongoing issue with Plaintiff's threatening behavior and paranoia and that Plaintiff's behavior had escalated to the point where Hamilton felt that Plaintiff was a safety risk." (Id. at ¶57.)

Both defendants Sweatt and Defendant Leveris were supervisors at Pizzuto's workplace at the time Pizzuto was terminated. (Id. at ¶¶ 12-13.) Neither Leveris nor Sweatt made the decision to terminate Pizzuto.[3] (Id. at ¶61.) Pizzuto does not allege in his Complaint that Sweatt or Leveris harassed him in any way. The only substantive allegation of fact regarding Sweatt and Leveris is that Hamilton decided to terminate

---

[3] In is clear from the Complaint that Hamilton, not Sweatt or Leveris, decided to terminated and terminated Pizzuto: "Hamilton decided to terminate Plaintiff on 7/25/03…" (Id. at ¶58); "Hamilton terminated Plaintiff…" (Id. at ¶61); "Airborne, through Crossken and Hamilton, engaged in an continuing course of discriminatory conduct against Plaintiff that ultimately led to his termination on 7/25/03." (Id. at ¶60).

3

Pizzuto based on the allegations of Sweatt and Leveris that Pizzuto had recklessly driven his car.[4]  (Id. at ¶ 58.)

Pizzuto now claims that he is handicapped and disabled due to a work-related calf injury, and that he had a perceived mental disability.  (Complaint at ¶¶ 61-63).

In his Complaint, Pizzuto asserts the following claims against the defendants: handicap discrimination (Counts I and III), discriminatory retaliation (Counts II and IV), violation of M.G.L. c. 152, ¶ 75B (workers' compensation retaliation) (Count V), intentional infliction of emotional distress (Count VI), intentional interference with advantageous or contractual relations (Count VII), and invasion of privacy (Count VIII).

## ARGUMENT

### I. PIZZUTO'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT VI) IS PREEMPTED BY THE WORKER'S COMPENSATION ACT

The exclusivity provision of the Workers' Compensation Act (the "WCA"), M.G.L. c. 152, provides that the WCA shall be the exclusive remedy for personal injuries arising out of employment.  *See* Mass. Gen. L. c. 152, § 24.  The WCA bars claims by employees against their employers for intentional infliction of emotional distress.  *See French v. United Parcel Service*, 2 F.Supp.2d 128, 132-133 (D.Mass. 1998) (O'Toole, J.) (dismissing claim for infliction of emotional distress as barred by the exclusivity provision of the WCA).  The WCA bars claims for infliction of emotional distress not only against the employer, but also claims against co-employees.  *Chatman v. Gentle Dental Center of Waltham*, 973 F.Supp. 228, 240 (D.Mass. 1997) (dismissing former employee's claim against former co-workers for intentional infliction of emotional

---

[4] In Paragraph 55 of the Complaint, Pizzuto makes the same allegation, only characterized slightly differently, and only against Sweatt.

distress because as barred by the Act) *citing Anzalone v. Massachusetts Bay Transportation Auth.,* 403 Mass. 119, 124-125, 526 N.E.2d 246, 249 (1988).

Pizzuto claims that his managers/supervisors, defendants Crossken, Hamilton, Sweatt and Leveris, intentionally inflicted emotional distress upon him. Under the rule stated in *French* and *Chatman*, this claim is barred as a matter of law by the WCA.

The sole exception to the exclusivity provision of the WCA does not apply in the case. Under that exception, an employee may bring suit against a co-employee for acts that are in no way within the scope of employment furthering the interests of the employer. This "course of employment" test, however, is broad and covers all acts that are "at least in part for a job related purpose." *Fredette v. Simpson*, 440 Mass. 263, 266, 797 N.E.2d 899, 902-903 (2003).

Pizzuto does not allege that any of the defendants' actions were committed outside the course of their employment. Instead, it is clear from the Complaint that that Pizzuto is claiming emotional distress resulting from the manner in which the defendants discharged their supervisory duties, i.e. warnings, directives, and discipline, and termination. (See Complaint at ¶¶ 21, 24, 34- 36, 55.) Such conduct is in the "course of employment" and is thus barred by the exclusivity provision of the WCA. *See French v. UPS,* 2 F.Supp.2d at 132-133 *(*dismissing infliction of emotional distress claim pursuant to Rule 12(b)(6) because alleged wrongful personnel actions and privacy violations, "were clearly done within the scope of the employment relationship"); *Anzalone,* 403 Mass. at 122-125, 526 N.E.2d at 248-250 (upholding 12(b)(6) dismissal of infliction of emotional distress claim and holding that where plaintiff alleged that upon his return to work from an absence after a work-related injury, his supervisor intentionally harassed

5

him and interfered with his employment, the conduct was in the scope of employment and claim was barred by the WCA); *Fusaro v Blakely*, 40 Mass.App.Ct. 120, 123, 661 N.E.2d 1339, 1341-1342 (1996) (vacating judgment for plaintiff on grounds that defendant co-employees' overzealous interrogation of an employee during a drug investigation was in the scope of employment and therefore the intentional infliction of emotional distress claim was barred by the WCA).

Pizzuto also fails to allege that the defendants' acts were not in furtherance of Airborne's interests. To the contrary, the Complaint portrays the individual defendants acting in collusion with Airborne. The Complaint states that the discrimination that led to Pizzuto's termination was committed by "Airborne, through Crossken and Hamilton." (Complaint at ¶ 60.) In such a case, the WCA's exclusivity provision applies and the claim is preempted. *See Acciavatti v. Professional Services Group*, 982 F.Supp.69, 77 n.5 (D.Mass. 1997) (dismissing infliction of emotional distress claim where "complaint paints a picture of [supervisor and employer] acting in collusion," and therefore, plaintiff failed to allege that supervisor's acts were in contravention of the defendant employer's interests).

In sum, the exclusivity provision of the WCA preempts Pizzuto's claim for intentional infliction of emotional distress. The lone exception to this rule does not apply, because Pizzuto has not alleged and cannot possibly show that the defendants' actions were outside the scope of their employment with Airborne and not in furtherance of Airborne's interests. Count VI, therefore, should be dismissed.

II. **PIZZUTO'S CLAIMS IN COUNTS V, VII AND VIII SHOULD BE DISMISSED BECAUSE THEY ARE PREEMPTED BY SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT**

Pizzuto's claims for violation of M.G.L. c. 152, § 75B (Count V); intentional interference with advantageous or contractual relations (Count VII); and invasion of privacy (Count VIII) are preempted, in their entirety by Section 301 of the Labor Management Relations Act ("LMRA"). 29 U.S.C. Section 185(a). Section 301 completely preempts a state law claim if the resolution of such claim "depends upon the meaning of the collective bargaining agreement." *Magerer v. John Sexton & Co.*, 912 F.2d 525, 529-530 (1st Cir. 1990) *citing Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988).

During Pizzuto's employment, he was a member of the Teamsters Local 25 (the "union"). (Complaint at ¶20, 29, 42.) There was a collective bargaining agreement (the "CBA") between Airborne and the union that governed terms of Pizzuto's employment. (Id. at ¶ 50.)

As is discussed fully below, because resolution of the claims in Counts V, VII, and VIII depends upon an interpretation of the CBA, these claims are preempted by Section 301 of the LMRA.

A. **Pizzuto's Claim for Invasion of Privacy (Count VIII) is Preempted by Section 301 of the LMRA**

Pizzuto's claim for invasion of privacy is dependent upon the meaning of the CBA, and therefore, is preempted by Section 301 of the LMRA. This claim, brought pursuant to M.G.L. c. 214, § 1B, is based on the allegation that defendants "Airborne and Hamilton infringed upon his right to privacy by requiring him to submit to a drug and

7

alcohol test without sufficient cause." (Complaint at ¶ 104.) Pizzuto states that the CBA permits drug and alcohol testing under certain circumstances, states that the circumstances provided for in the CBA are not present in this case. (Id.)

Pizzuto thereby admits in his Complaint that his invasion of privacy claim is dependent upon the terms of the CBA. (Id.) For this reason alone, Count VIII should be dismissed as preempted by Section 301 of the LMRA. *See Magerer*, 912 F.2d at 529-530 (claim that depends upon interpretation of a collective bargaining agreement is preempted by the LMRA).

The law is clear that language in a collective bargaining agreement that addresses drug and alcohol testing preempts a privacy claim under M.G.L. c. 214, § 1B. *See Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111 (1st Cir. 1988). In *Jackson*, just like in this case, an employee challenged drug testing by his employer under M.G.L. c. 214, § 1B. *Jackson*, 863 F.2d at 113. The First Circuit dismissed the employee's privacy claim, holding that it was preempted by LMRA. *Id*. The court stated that "[b]ecause resolution of [the employee's] state-law claims 'requires the interpretation of a collective bargaining contract,' ... it follows inexorably, as night unto day, that [the LMRA] preempts maintenance of the suit in its present form." *Id*. at 122 (*quoting Lingle*, 486 U.S. at 409 n. 8). *See also Connolly v. Boston Edison Co.*, No. 00-11849-PBS, 2001 WL 575868, (D.Mass. May 15, 2001) (Dein, M.J.) (dismissing invasion of privacy claim because plaintiff's challenge of employer's drug test required the court to examine and interpret the collective bargaining agreement).

The complaint and case law establish that Pizzuto's invasion of privacy claim is preempted by the LMRA. Count VIII, therefore, should be dismissed.

B.     **Pizzuto's Claim for Violation of M.G.L. c. 152, § 75B (Count V) is Preempted by Section 301 of the LMRA**

Section 301 of the LMRA preempts Pizzuto's claim for violation of M.G.L. c. 152, § 75B, because this claim depends upon the meaning of the CBA. In this claim, Pizzuto asserts that Airborne terminated him against him because of his assertion of rights under Massachusetts workers' compensation laws. (Complaint at ¶ 89.)

Claims under M.G.L. c. 152, § 75B are expressly preempted if a collective bargaining agreement provides standards to govern the conduct underlying the claim. M.G.L. c. 152, § 75B(3); *Magerer v. John Sexton & Co.*, 912 F.2d 525, 529-530 (1st Cir. 1990).

In *Magerer*, the First Circuit upheld the dismissal of a M.G.L. c. 152, § 75B claim under circumstances that are indistinguishable from those alleged in Pizzuto's complaint. *Id*. In that case, the court held that the plaintiff's claim was preempted due to general language in the collective bargaining agreement pertaining to the employer's right to discharge an employee. *Id*.

Like the agreement in the *Magerer* case, the CBA in this case has language pertaining to discharge. Article 47, entitled "Discharge and Suspension," permits Airborne to discharge an employee for "just cause." In addition, certain other provisions of the CBA are invoked by Pizzuto's claim for workers' compensation discrimination. Article 14 of the CBA governs workers' compensation claims. Article 37 of the CBA covers non-discrimination.

Just like in *Magerer*, Pizzuto's claim under M.G.L. c. 152, § 75B requires interpretation of the provisions of the CBA. For this reason, Count V must be dismissed.

9

### C. **Pizzuto's Claim for Interference with Advantageous or Contractual Relations (Count VI) is Preempted by Section 301 of the LMRA**

Pizzuto's claim for intentional interference with advantageous or contractual relations is preempted by Section 301 of the LMRA because it requires an interpretation of the CBA. In this claim, Pizzuto alleges that the individual defendants interfered with his advantageous or contractual relations with Airborne by inducing Airborne to terminate his employment. (Complaint at ¶ 98.)

Section 301 of the LMRA preempts a claim against a supervisory employee for interfering with an employee's employment contractual relations with the employer. *Magerer*, 912 F.2d at 530-531. According to the First Circuit, such a claim requires an examination of the rights of the employee and the supervisor under the collective bargaining agreement and an interpretation of the agreement as to whether the employer was entitled to discharge the employee under its terms. *Id*.

Pizzuto's claims against the individual defendants for Interference with Advantageous or Contractual Relations is preempted and must be dismissed.

### III. **PIZZUTO FAILS TO STATE A CLAIM AGAINST SWEATT AND LEVERIS**

The only allegation of conduct by Sweatt and Leveris –that they alleged that Pizzuto had driven his car recklessly – is insufficient to state a claim against them for handicap discrimination, retaliation, intentional infliction of emotional distress, and intentional interference with contractual relations.

### A.  Pizzuto Fails to State a Claim Against Sweatt and Leveris for Handicap Discrimination under M.G.L. c. 151B.

The Complaint appears to claim that defendants Sweatt and Leveris should be held liable for "aiding and abetting" in the alleged discrimination.  In order to state such a claim Complainant must allege that the defendants interfered with his rights in a manner that was "in deliberate disregard of those rights."  *Baptiste v. Massachusetts General Hospital*, No. 96-BEM-2625, 2003 WL 23018195 at *10 (MCAD Dec. 12, 2003), *citing Woodason v. Town of Norton School Committee*, 25 MDLR 62 (2003).  Among other things, Pizzuto must allege – with respect to each individual defendant – that he had "the requisite 'intent to discriminate' required to impose individual liability on him for unlawful discrimination or retaliation."  *Baptiste*, *supra,* at *10; *see also Beaupre v. Cliff Smith & Associates*, 50 Mass. App. Ct. 480, 495, 738 N.E.2d 753, 767 n.23 (2000) (liability for aiding and abetting violation of Chapter 151B requires "the requisite intent to discriminate").

In order to avoid a motion to dismiss, a claim against a supervisor under M.G.L. c. 151B, §4(5) for aiding and abetting discrimination must set forth a sufficient factual basis for the claim of discrimination.  *See Daigle v. NECX, Inc*., No. 991555D, 2001 WL 1199868 (Mass.Super. Feb. 23, 2001) (Kern, J.) (granting motion to dismiss in favor of two supervisory employees because there were "no specific factual assertions either defendant discriminated against the plaintiff nor that either aided or abetted any such conduct by others").

The Complaint makes no specific factual assertions that Sweatt or Leveris discriminated against Pizzuto, or aided or abetted any such conduct by others.  To the

11

contrary, the Complaint excludes Sweatt and Leveris when discussing the discriminatory conduct. The Complaint states that "Airborne, through *Crossken* and *Hamilton*, engaged in an continuing course of discriminatory conduct against Plaintiff that ultimately led to his termination on 7/25/03." (Id. at ¶60, emphasis added.) The complaint also fails to allege that Sweatt or Leveris has any "intent to discriminate."

The only factual assertion in the Complaint regarding the conduct of Sweatt or Leveris – that they reported that Pizzuto had driven his car recklessly – falls miserably short of satisfying the elements of a discrimination claim under M.G.L. c. 151B against defendants Sweatt and Leveris. This claim, therefore, should be dismissed against these defendants.

      **B.**      **Pizzuto Fails to State a Claim Against Sweatt and Leveris for Retaliation under the ADA and M.G.L. c. 151B**

To state a claim for retaliation under the ADA or Massachusetts law, a plaintiff must allege that the defendant took an adverse employment action that is causally related to protected activity. *EEOC Guidance on Investigating, Analyzing Retaliation Claims*, Daily Labor Reporter (BNA), May 26, 1998; Mass. Gen. L. c. 151B, § 4(4); *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 662-664, 672 N.E.2d 1, 7-9 (1996). An adverse employment action, generally, is an imposition of different terms or conditions of employment, such as demotion, failure to promote, and termination. *See Burns v. Potter*, 334 F.Supp.2d 13, 20 (D.Mass. 2004). *See also Hernandez-Torres v. Intercontinental Trading Co.*, 158 F.3d 43, 47 (1st Cir. 1998) (citing examples of adverse employment actions as "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees"); *Connell v. Bank of Boston*, 924 F.2d 1169, 1179 (1st Cir. 1991) (granting

summary judgment for defendant on retaliation claim for failure to show adverse employment action and citing examples of adverse employment action as "discharge, demotion, or failure to promote").

It is not enough for a plaintiff to allege generally that he suffered an adverse employment action; the complaint must specify the different terms and conditions of employment that resulted from the retaliation. *Burns*, 334 F.Supp.2d at 20 (dismissing retaliation claim against supervisor because plaintiff failed to allege a single incident sufficient to constitute an adverse employment action).

Pizzuto makes a claim for retaliation, but alleges no adverse employment actions by Sweatt or Leveris. To the extent that the Complaint intends to allege that the termination of Pizzuto's employment was the adverse employment action, such allegation does not support a retaliation claim against Sweatt or Leveris. The Complaint establishes that neither Sweatt nor Leveris terminated Pizzuto and that Hamilton alone made the decision to terminate. (Complaint at ¶¶ 58, 60-61; see footnote 3, *supra*.) In addition, Pizzuto acknowledges that Sweatt and Leveris did not have a role in the discrimination when he states in Paragraph 60 of the Complaint that it was Hamilton and Crossken who engaged in the discriminatory conduct that led to his termination.

No fact alleged in the Complaint supports the notion that Sweatt or Leveris took an adverse employment action against Pizzuto. Instead, the only conduct by Sweatt and Leveris alleged by Pizzuto – that they reported that he had driven recklessly – does not constitute an adverse employment action.

Pizzuto's failure to allege any adverse employment action taken by Sweatt of Leveris is fatal to his retaliation claims against them, and such claims should be dismissed.

C. **Pizzuto Fails to State a Claim Against Sweatt and Leveris for Intentional Infliction of Emotional Distress**

Even if Pizzuto's Intentional Infliction claim (Count VI) could survive the above-stated argument for preemption (*see* Section I, *supra*) – which it cannot – there is an additional reason that this claim fails as a matter of law with respect to defendants Sweatt and Leveris.

In order to survive a motion to dismiss, a complaint for infliction of emotional distress must allege conduct by the defendant that is "extreme and outrageous," "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." *French v. United Parcel Service, Inc.*, 2 F.Supp.2d 128, 132 (D.Mass. 1998) (O'Toole, J.) (dismissing claim for infliction of emotional distress for failure allege requisite conduct). A bare allegation that the defendant's conduct is "extreme and outrageous" is not enough to satisfy the element; the complaint set forth facts to satisfy this requirement. *See id*. *See also Kurker v. Hill*, 44 Mass.App.Ct. 184, 193, 689 N.E.2d 833, 839-840 (1998) (dismissing infliction of emotional distress claim because no extreme and outrageous conduct alleged, and stating that the complaint must do more than just "parrot the requisite elements").

The Complaint fails to allege any extreme or outrageous conduct on the part of Sweatt and Leveris. The lone allegation that Sweatt and Leveris reported that Pizzuto has driven his car recklessly does not rise to the level of "extreme and outrageous," "beyond

14

all possible bounds of decency" and "utterly intolerable in a civilized community." Count VI, therefore, should be dismissed against these defendants.

### D. Pizzuto Fails to State a Claim Against Sweatt and Leveris for Intentional Interference with Advantageous or Contractual Relations

Even if Pizzuto's Intentional Interference claim (Count VII) was not preempted by Section 301 of the LMRA (*see* Section II(C), *supra*) – although it certainly is – there is an additional reason that this claim should be dismissed against defendants Sweatt and Leveris.

Under Massachusetts law, a supervisory employee enjoys a qualified privilege with respect to claims by subordinate employees for interference with their employment relationship. *Zimmerman v. Direct Federal Credit Union*, 262 F.3d 70, 76 (1st Cir. 2001) *citing Gram v. Liberty Mutual Insurance Co*., 384 Mass, 659, 663-664, 429 N.E.2d 21,24 (1981). To overcome this privilege, an employee must allege and prove that the supervisor acted with "actual malice." *Id*. "Actual malice" is defined by the case law as a "spiteful, malignant purpose, unrelated to the corporate interest." *See King v. Driscoll*, 418 Mass. 576, 587, 638 N.E.2d 488, 494-495 (1994).

The Complaint identifies Sweatt and Leveris as supervisory employees, and as such, they enjoy a qualified privilege against Pizzuto's claim of intentional interference with his employment relationship. The Complaint, however, contains no allegation to overcome the privilege; nothing therein even suggests that Sweatt or Leveris acted with actual malice.[5] The lone allegation against Sweatt and Leveris– that they had alleged that

---

[5] While allegations of unlawful discrimination or retaliation may satisfy the actual malice requirement, *see Zimmerman*, 262 F.3d at 77, such allegations are also lacking in the Complaint, as is established above.

15

Pizzuto had driven his car recklessly – does not imply a "spiteful, malignant purpose, unrelated to the corporate interest," as is required to show actual malice.

Because Pizzuto has failed to allege any actual malice on the part of Sweatt or Leveris, the interference claim should be dismissed against them. *See Daley v. Wellpoint Health Networks, Inc*., 146 F.Supp.2d 92, 104 (D.Mass. 2001) (Stearns, J.) (dismissing intentional interference claim where nothing plead in the complaint established that defendants acted maliciously).

## **CONCLUSION**

For the reasons stated herein, and in the accompanying Motion to Dismiss, the defendants submit and respectfully request that this Court dismiss Counts V, VI, VII, VIII of the Complaint and all claims against defendants Sweatt and Leveris.

        AIRBORNE EXPRESS, INC., ET AL.,
        By their attorneys,

        /s/ C. Max Perlman_____
        C. Max Perlman (BBO # 630395)
        Jennifer Catlin Tucker (BBO #547944)
        SULLIVAN WEINSTEIN & MCQUAY, P.C.
        Two Park Plaza
        Boston, MA  02116-3902
        (617) 348-4300
        max@resq.com; jtucker@swmlawyers.com

Dated:     February 28, 2005

### **CERTIFICATE OF SERVICE**

I, C. Max Perlman, hereby certify that I served the above document upon counsel for the plaintiff by e-mail and mail this 28th day of February, 2005.

        /s/ C. Max Perlman_____
        C. Max Perlman