**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**PAUL PIZZUTO**

                              **Plaintiff,**                    **Civil Action No. 04-12492 GAO**

**vs.**

**AIRBORNE EXPRESS, INC., STEVEN**
**CROSSKEN, JOSEPH HAMILTON,**
**GREG SWEATT, AND ARTHUR**
**LEVERIS,**

                              **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

The Defendants submit this Memorandum of Law in Support of their Motion for Summary Judgment.

This case arises out of Defendant Airborne Express's termination of Plaintiff Paul Pizzuto's employment.  Mr. Pizzuto claims that his termination constitutes disability/handicap discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") and Mass. Gen. L. 151B.  He has brought claims against Airborne Express and four individuals – Joseph Hamilton, Steven Crossken, Arthur Leveris and Gregory Sweatt -- all of whom supervised Mr. Pizzuto at Airborne Express.

Mr. Pizzuto's claims fail as a matter of law, because:

1)    Airborne Express had a legitimate, non-discriminatory reason for terminating Mr. Pizzuto's employment, which he cannot refute.  Mr. Hamilton, who

alone made the decision to terminate Mr. Pizzuto's employment, had received no fewer than ten written reports over a ten day period regarding threats that Mr. Pizzuto had made to other Airborne Express personnel. According to these written reports to Mr. Hamilton,[1] Mr. Pizzuto made the following threatening statements in the days leading up to his termination, among others:

- "someone was trying to F**** around with him," and that when he found out who it was "there was going to be trouble."

- "Have you ever seen someone die?" "I am not afraid of anyone or anything." "They can shoot me now with one bullet." "I am not afraid to die." "Do you have a family …?"

- "[I'll] fix [you], [I'll] get [you]"

- "all you guys are going to get it."

- "you guys are going down big time."

These reports characterized Mr. Pizzuto as "out of control," "dangerous to all employees," a "major disruptive force in the workplace," and a "serious[…] liability to the company."

On the heels of these reports, Mr. Hamilton received further reports from witnesses that Mr. Pizzuto sped his car up a ramp, into the loading dock inside Airborne's building and jumped out of his car. According to the reports, the witnesses thought that Mr. Pizzuto was going to jump out of his car and start shooting, and they immediately looked for an escape route.

It is undisputed that Mr. Hamilton terminated Mr. Pizzuto after receiving the information and reports regarding Mr. Pizzuto's threatening statements and behavior.

---

[1] All of the reports mentioned and quoted herein are attached as Exhibits to the accompanying Affidavit of Joseph Hamilton.

Mr. Pizzuto cannot meet his burden to show that Airborne's stated reason is pretext and the actual reason is discriminatory. Mr. Pizzuto's claim that he did not engage in threatening statements and behavior is insufficient as a matter of law to prevent summary judgment.

2)    Mr. Pizzuto cannot establish a claim for retaliation. In the course of discovery, Mr. Pizzuto was required to articulate the basis for his retaliation claim, but utterly failed to do so. He identified no protected activities in which he engaged, offers no suggestion that his termination was causally linked to any protected activity on his part, and raises no inference that his termination was retaliatory in any respect.

3)    The Claims against the four individual Defendants fail as a matter of law. The ADA does not provide for individual liability, and the facts do not establish liability for the individuals under state law. The record shows that the Plaintiff cannot establish that any of the Defendants had the requisite intent to discriminate. Further, it is undisputed that Mr. Crossken was not involved in Mr. Pizzuto's termination and committed no other discriminatory or retaliatory acts against Mr. Pizzuto.

## II. UNDISPUTED FACTS

### A.    Mr. Pizzuto's Employment With Airborne and His Termination Therefrom

1.    In 2003, Plaintiff Paul Pizzuto was employed by Defendant Airborne Express, Inc. ("Airborne") as a driver at its facility in Stoneham, Massachusetts. (Complaint ¶ 9.)

2.    On or about July 16, 2003, the station manager, Defendant Joseph Hamilton, began receiving complaints about troubling and threatening statements and behavior by Mr. Pizzuto. On July 16, 2003, Mr. Hamilton received a report from Michael Trudeau, a

supervisor at the Stoneham facility, that Mr. Pizzuto had become "irate" with him, began "yelling vulgar language," and threatened to "get the guys" who "did it [caused an issue with his package count]." (Affidavit of Joseph Hamilton ("Hamilton Aff.") at Ex. 1.)

3.     Also on July 16, 2003, Mr. Hamilton received a report from another supervisor, Christopher Demmons, stating that Mr. Pizzuto threatened that "He'd fix me…he'd get me" and that Mr. Pizzuto had become a "serious[…] liability to the company and a major disruptive force in the workplace." (*Id*. at Ex. 2.)

4.     Also on July 16, 2003, Mr. Hamilton received a report from Bill McClellan stating that Mr. Pizzuto said that "someone was trying to f*** around with him," and that when he found out who it was "there was going to be trouble." (*Id*. at Ex. 3.)

5.     Also on July 16, 2003, Mr. Hamilton received a report from Defendant Arthur Leveris stating that Mr. Pizzuto "was out of control, using vulgar language and making threatening statements" and characterizing Mr. Pizzuto as "dangerous to all employees working at [Airborne's Stoneham facility]…" (*Id*. at Ex. 4.)

6.     The following week, on July 23, 2003, Mr. Hamilton received another report from Arthur Leveris describing behavior by Mr. Pizzuto that he had witnessed. (*Id*. at Ex. 5.) The report stated that during a video presentation, Mr. Pizzuto was drawing attention to himself and "staring at [Mr. Hamilton] with such a look as if he wanted to fight [Mr. Hamilton]." (*Id*.)

7.     On July 24, 2003, Mr. Hamilton received a report from Timothy Carter stating that Mr. Pizzuto had threatened, "you guys are going to get it," "someone is going to get you guys," or words to that effect. (*Id*. at Ex. 6.)

8.    On July 24, 2003, Mr. Hamilton received a report from Defendant Greg Sweatt stating that Mr. Pizzuto threatened, "you guys are going to get it" and "all you guys are going to get it."  (*Id*. at Ex. 7.)

9.    Michael Trudeau informed Mr. Hamilton that on July 24, 2003, Mr. Pizzuto threatened that "you guys are going down big time," "do you have a family Mike?" "Have you ever seen someone die?"  "I am not afraid of anyone or anything."  "They can shoot me now with one bullet."  "I am not afraid to die."  (*Id*. at ¶ 11.)  Mr. Trudeau made a report in writing to Mr. Hamilton.  (*Id*. at Ex. 8.)

10.    Mr. Hamilton tried to discuss these incidents with Mr. Pizzuto before he left work on July 24th, but Pizzuto refused.  (*Id*. at ¶ 12; Deposition of Paul Pizzuto ("Pizzuto Depo.") at 209.) [2]  Hamilton made plans to speak with Mr. Pizzuto the next morning. (Hamilton Aff. ¶ 12.)

11.    On the morning of July 25, 2003, before Mr. Hamilton could meet with Mr. Pizzuto, Defendants Sweatt and Leveris each approached Joseph Hamilton and gave reports of an incident they said they had both witnessed earlier in the morning. (Hamilton Aff. ¶ 13.)  Mr. Leveris and Mr. Sweatt both reported to Mr. Hamilton that Mr. Pizzuto drove his car into the building at a high rate of speed and jumped out of his car.  (*Id*. at Ex. 9, 10.)  Mr. Sweatt informed Mr. Hamilton that he "first thought that [Mr. Pizzuto] was planning to jump out of his car and start shooting" and that he "quickly moved out of the way and looked for some type of cover."  (*Id*. at Ex. 9.)  Mr. Leveris informed Mr. Hamilton that he "immediately looked for an escape route because of [Mr. Pizzuto's] recent actions and gestures toward NSH management."  (*Id*. at Ex. 10.)  Mr.

---

[2] The cited pages of the Pizzuto Depo. are attached as Exhibit 1 to the accompanying Affidavit of C. Max Perlman ("Perlman Aff.").

Pizzuto now admits that he drove his car into Airborne's facility (or at least up the ramp to the edge of the facility) and on the same day of the incident, he wrote that he was "wrong" to do that.  (Pizzuto Depo. at 212-221; Deposition Exhibits 55 and 56[3].)

12.    Based on the reports regarding Mr. Pizzuto's behavior on the day before and then the reports from Messrs. Sweatt and Leveris, Mr. Hamilton terminated Mr. Pizzuto. (Hamilton Aff. ¶ 14.)  Mr. Hamilton alone made the decision to terminate Mr. Pizzuto. (*Id*.)  Mr. Hamilton considered the information and numerous reports that he received over the preceding ten day period from Messrs. Trudeau, Demmons, McClellan, Sweatt, Leveris, Carter.  Mr. Hamilton considered whether the information and reports from these men were credible, and determined that it was.  (*Id*.)  Mr. Hamilton also considered Airborne's policies against workplace violence (*see, id*. at Ex. 11.) and the need for him to provide a safe workplace for his employees.  (*Id*. at ¶¶ 14-15.)

13.    Mr. Pizzuto does not know of any discriminatory or retaliatory motive that Mr. Hamilton used in terminating him.  Instead, Mr. Pizzuto admits that he has no idea what Mr. Hamilton's actions or thoughts were in terminating his employment.  (Pizzuto Depo. at 230.)  Mr. Hamilton's uncontroverted testimony is that he terminated Mr. Pizzuto because of the reports of his threatening behavior and the fear that these threats would escalate into physical violence in the workplace.  (Hamilton Aff. ¶¶ 14-15.)

14.    The only conduct of Defendant Leveris that Mr. Pizzuto contends was discriminatory was "[w]hen he said I was getting out of the car and I was going to start shooting him" and telling Mr. Hamilton about this.  (Pizzuto Depo. at 304-305.)

---

[3] A copy of Deposition Exhibits 55 and 56, which are discussed in the Pizzuto Depo. at 212-221, are attached to the Perlman Aff. as Exhibits 2 and 3, respectively.

15.     The only conduct of Defendant Sweatt that Mr. Pizzuto contends was discriminatory was that he "said I got out of the car and…I was going to start shooting people in the building." (*Id*. at 299-300.)

16.     Mr. Pizzuto could not deny that the Defendants may have acted out of dislike for him (as opposed to discriminatory animus). (*Id*. at 307.)

17.     While Mr. Pizzuto makes a claim of retaliation, he does not identify any protected activity in which he claims to have engaged, offers no suggestion that his termination was causally linked to any protected activity on his part, and does not have any evidence that his termination was retaliatory in any respect. (*See*, Pizzuto's Answer to Interrog. No. 6, failing to state the basis for his retaliation claim[4].)

**B.     Crossken's Role**

18.     On January 14, 2002, Defendant Steven Crossken became District Field Services Manager of Airborne Express's Stoneham Facility. (Affidavit of Steven Crossken ("Crossken Aff.") ¶ 2 .)

19.     On March 10, 2003, Airborne Express transferred Mr. Crossken to its facility in Hackensack, New Jersey, after which Mr. Crossken had no further input regarding Mr. Pizzuto's employment. (Crossken Aff. ¶ 4 ; Hamilton Aff. ¶ 16.)

20.     Mr. Pizzuto does not base any of his claims of discrimination and/or retaliation on acts that occurred before February 18, 2003. (*See*, Pl.'s Answer to Defs.' Interrog. No. 7.) Therefore, any discriminatory or retaliatory acts by Crossken would have had to have occurred between February 18, 2003 and March 10, 2003.

21.     Mr. Pizzuto admits that Crossken did not commit any discriminatory or retaliatory acts between February 18, 2003 and March 10, 2003. (*See*, Pl.'s Answers to

---

[4] The Plaintiff's Answers to the Defendants' Interrogatories are attached as Exhibit 4 to the Perlman Aff.

Defs.' Interrogs. Nos. 5 and 6.)[5]  In fact, Mr. Pizzuto characterizes Mr. Crossken as an

"angel" for this time period.  (Pizzuto Depo. at 91.)

22.    Mr. Crossken had no involvement in Mr. Pizzuto's termination.  (Crossken

Aff. ¶ 5; Hamilton Aff. ¶ 16.)

## III.  ARGUMENT

**A.    <u>Summary Judgment Standard</u>**

Summary judgment is properly granted when the record, viewed in the light most

favorable to the nonmoving party and giving that party the benefit of all reasonable

inferences, shows that there is no genuine issue of material fact, and the moving party is

entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).

> "[T]he plain language of Rule 56(c) mandates the entry of summary judgment,
> after adequate time for discovery and upon motion, against a party who fails to
> make a showing sufficient to establish the existence of an element essential to that
> party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party carries the initial

burden of demonstrating the absence of a genuine issue of material fact.  *Id.* at 323.  Once

the moving party has carried its initial burden, "the nonmoving party [must]...go beyond

the pleadings and, by...affidavits or by the 'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for

trial.'"  *Id.* at 324, *quoting* Fed.R.Civ.P. 56(c) and (e).

---

[5] In Interrogatory Nos. 5 and 6, the Defendants asked Mr. Pizzuto to "state the basis …for your claim that
Defendants [discriminated/retaliated] against you on the basis of your disability or handicap(s)."  Mr.
Pizzuto's answers do not refer to any discriminatory or retaliatory act by Mr. Crossken.  In fact, Mr.
Pizzuto's answer fails to refer to Mr. Crossken at all.

**B.**     <u>**Elements and Burdens of a Handicap/Disability Discrimination Claim**</u>

Under the familiar *McDonnell Douglas* regimen, a Plaintiff alleging disability/handicap discrimination "carr[ies] the initial burden...of establishing a prima facie case..." by showing that (1) he was a "handicapped" individual within the meaning of the statutes; (2) was a "qualified handicapped individual," meaning that he was able to perform the essential functions of his job, with or without reasonable accommodation; and (3) was terminated under circumstances that would permit a reasonable person to infer that the employer discriminated against the plaintiff on the basis of the handicap. *Straughn v. Delta Airlines, Inc.*, 250 F.3d 23, 33 (1st Cir. 2001), *quoting McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Labonte v. Hutchins & Wheeler*, 678 N.E.2d 853, 859 (Mass. 1997).

If the plaintiff is able to make out a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the termination. *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 242 (1st Cir. 2006). If the employer does so, the burden shifts to the plaintiff to show that the employer's stated reason for termination was in fact a pretext for discrimination. *Id.* To overcome this burden, the plaintiff "'must elucidate specific facts which would enable a jury to find that the reason given [by the employer] is not only a sham, but a sham intended to cover up the employer's real [and unlawful] motive' of discrimination." *Id.* at 246, *quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990).*

**C.    The Plaintiff Cannot Establish that the Reasons for His Termination were Pretextual**

The Defendants are entitled to summary judgment in this case, because Mr. Pizzuto has no evidence that the reason given for his termination was a pretext for discrimination.[6]

The Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's termination – that Mr. Pizzuto was terminated for engaging in threatening statements and behavior.  Thus, Mr. Pizzuto has the burden to show that the employer's stated reason for terminating him was, in fact, a pretext for retaliation or discrimination. *Azimi*, 456 F.3d at 242, 246.  At this stage,

> to avoid summary judgment, the plaintiff must introduce sufficient
> evidence to support two findings: (1) that the employer's
> articulated reason for [terminating] the plaintiff is a pretext, and (2)
> that the true reason is discriminatory.... While the plaintiff may
> rely on the same evidence to prove both pretext and discrimination,
> the evidence must be sufficient for a reasonable factfinder to infer
> that the employer's decision was motivated by discriminatory
> animus.

*Udo v. Tomes*, 54 F.3d 9, 13 (1st Cir. 1995) (citations omitted).  To meet its two-part burden, the plaintiff must establish *specific facts* to show that the employer's stated reason is a sham, and "summary judgment is appropriate if the non-moving party rests...[on] conclusory allegations, improbable inferences, [or] unsupported speculation." *Azimi*, 456 F.3d at 241.  If the plaintiff cannot offer sufficient facts to refute the employer's legitimate reason, summary judgment must be granted to the employer.  *See id.; Hoeppner v. Crotched Mountain Rehab. Ctr.*, 31 F.3d 9, 14-16 (1st Cir. 1994);

---

[6] While the Plaintiff would have a very difficult time establishing a prima facie case of discrimination were this case to reach trial, this motion for summary judgment does not address the elements of the prima facie case, and instead focuses on the plaintiff's requirement to show pretext and discrimination after the burden shifts back to the plaintiff.

*Lawrence v. Northrup Corp.*, 980 F.2d 66, 72-74 (1st Cir. 1992).  In sum, at the summary

judgment stage, it is up to the plaintiff to produce sufficient evidence, in the form of

specific facts, to generate a material dispute of fact that the defendant's articulated

reasons for firing him were pretext and the real reasons were discriminatory.  *Azimi,* 456

F.3d. at 247.    Mr. Pizzuto cannot meet this burden.

   The undisputed facts in this case are that Defendant Hamilton alone made the

decision to terminate Mr. Pizzuto, and that he did so after receiving approximately ten

reports from six different Airborne employees during a ten-day period regarding

threatening statements and behavior by Mr. Pizzuto.  (Statement of Undisputed Facts

("SUF"), *supra*, at ¶¶ 2-13.)  According to these reports, Mr. Pizzuto made threats to

other Airborne employees, including:

- "someone was trying to F**** around with him," and that when he found out who it was "there was going to be trouble."

- "Have you ever seen someone die?"  "I am not afraid of anyone or anything."  "They can shoot me now with one bullet."  "I am not afraid to die." "Do you have a family Mike?"

- "[I'll] fix [you], [I'll] get [you]"

- "all you guys are going to get it."

- "you guys are going down big time."

(*Id*.)  According to these reports, Mr. Pizzuto was "out of control," "dangerous to all

employees," a "major disruptive force in the workplace," and a "serious[…] liability to

the company."  (*Id*.)

   Shortly after receiving all of these reports, Mr. Hamilton received reports from

two witnesses that Mr. Pizzuto drove his car into Airborne's building at a high rate of

speed and jumped out of his car.  (SUF ¶ 11.)  According to the reports, the witnesses

"first thought that [Mr. Pizzuto] was planning on jumping out of his car and start

shooting" and "immediately looked for an escape route b/c of [Mr. Pizzuto's] recent

actions and gestures toward [Airborne] management."   (*Id*.)  That same day, Mr.

Hamilton terminated Mr. Pizzuto.

Mr. Pizzuto cannot dispute that Mr. Hamilton received the reports of threats and

threatening behavior.  Mr. Pizzuto cannot dispute that Mr. Hamilton made his decision to

terminate his employment on the basis of the numerous reports and/or the information

contained therein, and out of concern for the safety of the people in the workplace.  (SUF

¶¶ 12-13.)

Instead, Mr. Pizzuto's only argument appears to be a blanket denial of making

any threats or threatening behavior.[7]  For reasons recently articulated by the First Circuit

in *Azimi v. Jordan's Meats, Inc*., this showing by Mr. Pizzuto, even if true, does not help

Mr. Pizzuto stave off summary judgment.  456 F.3d 228.  Last year in *Azimi*, the First

Circuit affirmed a grant of summary judgment under strikingly similar circumstances.  In

that case, the plaintiff was fired for making threats against a co-worker.  The plaintiff

opposed summary judgment by denying that he made the threats.  The Court rejected the

plaintiff's argument, finding that the plaintiff's denial of wrongdoing was not enough to

raise an inference of pretext.  *Id*. at 246.  The Court stated that in addressing pretext, a

court's focus must be on the "perception of the decisionmaker," that is, whether the

employer believed its stated reason to be credible.  *Id.*

Mr. Pizzuto's claims fail for the same reasons that the First Circuit rejected the

claims in *Azimi*.  Like the defendant in *Azimi*, Airborne terminated Mr. Pizzuto after

---

[7] Despite the ten contemporaneous written reports by six individuals, Mr. Pizzuto denies making any of the statements or actions attributed to him.

receiving reports that he had threatened co-workers.  (SUF at ¶¶ 2-13.)  Mr. Pizzuto cannot defeat this motion for summary judgment by simply denying that he engaged in the threatening statements and behavior.  Instead, Mr. Pizzuto needs to establish that the "decisionmaker," Mr. Hamilton, did not believe the reports of Mr. Pizzuto's threats and acted out of discriminatory animus.  *Azimi*, 456 F.3d at 246.  Mr. Pizzuto cannot establish this.

At the time of the termination, Mr. Hamilton had received ten reports over a ten day period from six different Airborne employees.  (SUF ¶¶ 2-11.)  The reports each described threatening behavior by Mr. Pizzuto and were consistent with each other.  (*Id*.)  He assessed the credibility of the authors of the reports and found them to be credible.  (SUF ¶ 12.)  He made an effort to meet with the Plaintiff to discuss the threats, and Mr. Pizzuto refused.  (SUF ¶ 10.)   Mr. Hamilton also considered Airborne's policies against workplace violence and the need for him to provide a safe workplace for his employees.  (SUF ¶¶ 12-13. )  Under these facts, it is clear that Mr. Hamilton believed that Mr. Pizzuto was engaging in threatening statements and behavior toward other Airborne employees.

On the established record, like in *Azimi*, Mr. Pizzuto does not meet his burden to elucidate specific facts that would enable a jury to find that Mr. Hamilton's given reason was a sham intended to cover up a discriminatory motive, and he cannot escape summary judgment by merely denying that he engaged in threatening statements and behavior.

In sum, the Defendants are entitled to summary judgment because the Plaintiff cannot produce sufficient evidence to generate a material dispute of fact that the Defendants' articulated reasons for firing him were pretext.

**C.     Plaintiff's Retaliation Claim Fails as a Matter of Law**

Plaintiff also purports to state a claim for retaliation.  Under the ADA and Massachusetts law, a plaintiff claiming retaliation must establish that:  (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.  42 U.S.C.A. § 12203(a); *Mole v. Univ. of Mass*., 814 N.E. 2d 329, 338-339 (Mass. 2004).

The Plaintiff has failed altogether to identify any factual basis for a retaliation claims.  The Defendants posed an interrogatory to Mr. Pizzuto, asking him to state the basis of his claim that Defendants retaliated against him.  In his response, Plaintiff fails to identify any protected activity in which he claims to have engaged, offers no suggestion that his termination was causally linked to any protected activity on his part, and is wholly unable to raise any inference whatsoever that his termination was retaliatory in any respect.  (SUF ¶ 17.)

Given the total absence of evidence, Plaintiff's retaliation claims under state and federal law (Counts II and IV) fail as a matter of law with respect to all Defendants.

**D.     There is No Basis For Imposing Liability On The Individual Defendants**

Even if Plaintiff's discrimination claims could survive summary judgment with respect to the arguments above – which they cannot – the individual Defendants are entitled to summary judgment on the claims against them under the ADA and M.G.L. ch. 151B.

**1.     *The ADA Claim Against the Individual Defendants Must Be Dismissed Because the ADA does not provide for Individual Liability***

There is no support in the First Circuit for individual liability under the ADA. Decisions from the District of Massachusetts have likewise found that it is "virtually

settled at this point that no individual liability exists under the ADA." *Meara v. Bennett*, 27 F.Supp.2d 288, 290 (D. Mass. 1998) (dismissing on summary judgment ADA claims against individual defendant). While the First Circuit has not directly addressed this issue, in *Meara*, Judge Ponsor noted that "Courts of Appeal that have directly addressed the issue of individual liability under the ADA have … concluded that no such liability exists." *Id.*

More recently, in *Lemire v. Silva*, 104 F. Supp. 2d 80, 92 (D. Mass. 2000), the court granted summary judgment to individual defendants on ADA claims, stating:

> The ADA forbids discrimination by any "covered entity," defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. §§ 12112(a); 12111(2). "Employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees ... and any agent of such person." 42 U.S.C. § 12111(5)(A). The inference is strong that Congress (and the President in signing rather than exercising a veto) included the reference to "any agent of such person" to ensure employer liability, and reject individual liability.

*Id. citing U.S. EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995).

For the reasons cited in *Meara* and *Lemire*, the Plaintiff's ADA claims against the individuals fail as a matter of law.

**2.      *The 151B claim against the individual Defendants must be dismissed because Plaintiff fails to make the requisite showing as required by the statute***

Unlike its federal counterpart, Massachusetts General Laws chapter 151B provides for individual liability, and states that an individual may not "coerce, intimidate, threaten, or interfere with" another's exercise or enjoyment of rights protected by ch. 151B (sec. 4(4A)) and may not aid and abet a violation of ch. 151B (Sec. 4(5)).

15

The individual Defendants are entitled to summary judgment on the aiding and abetting (sec. 4(5)) claim. If Airborne gets summary judgment on the discrimination claim – which it should as discussed above – the individual Defendants are automatically (and logically) entitled to summary judgment on the aiding and abetting claim. *See Beasley v. ARAMARK Uniform and Career Apparel, Inc*., 430 F. Supp. 2d 8, 14 (D. Mass. 2006) (granting summary judgment to individual on M.G.L. ch 151B sec. 4(5) claim because the court concluded that the employer was entitled to summary judgment). Even if the claims against Airborne survive summary judgment – which they should not – to prevail on a sec. 4(5) aiding and abetting claim, Plaintiff would have to demonstrate that the Defendants each knew of their substantial supporting role in an unlawful enterprise, and shared the mental state of the principal violator. *Harmon v. Malden Hospital*, 19 MDLR 157, (1997) (a copy of this decision by the Massachusetts Commission Against Discrimination ("MCAD") [8] is attached as Ex. 5 to the Perlman Aff.), *cited with approval by Beaupre*, 738 N.E. 2d at 764. As discussed below in subsections (a) through (c), the Plaintiff cannot make this showing as to any of the individual defendants.

Further, the individual defendants are entitled to summary judgment on the sec. 4(4A) claim. The Massachusetts Commission Against Discrimination ("MCAD") has recently stated that in circumstantial evidence cases under sec. 4(4A) – like this one – claims against individuals are only appropriate if:

---

[8] Under Massachusetts law, the MCAD's interpretations of G.L. ch. 151B are to be accorded deference by the courts. College-Town, Div of Interco, Inc. v. MCAD 508 N.E.2d 587, 593 (Mass. 1987); Beaupre v. Cliff Smith Associates, 738 N.E.2d 753, 764 (Mass. App. Ct. 2000).

a.      [the alleged perpetrator] had the authority or the duty to act on

behalf of the employer;

b.      [that individual's] action or failure to act implicated rights under

the statute; and

c.      there is evidence articulated by the complainant that the action or

failure to act was in deliberate disregard of the complainant's rights

allowing the inference to be drawn that there was intent to discriminate or

interfere with complainant's exercise of rights.

*Woodason v. Norton Sch. Comm.,* 25 MDLR 62, 64 (2003) (a copy of this decision by

MCAD is attached as Ex. 6 to the Perlman Aff.) *quoted by Beasley*, 430 F. Supp. 2d at

14.  As discussed in subsections (a) through (c), below, the Plaintiff cannot meet this

standard as to any of the individual defendants.

a.      <u>Plaintiff is Unable to Establish Liability on the Part of Defendants
        Sweatt and/or Leveris</u>

Plaintiff's discrimination claim against Defendants Sweatt and Leveris is based

solely on the alleged fact that Sweatt and Leveris falsely reported Plaintiff's threatening

conduct – speeding his car up the ramp into the loading dock -- to Hamilton on the day of

his termination.  (SUF ¶¶ 14-15.)

This showing does not suffice under M.G.L. ch 151B sec. 4(4A).  First, Mr.

Pizzuto cannot establish, as he is required to do, that Sweatt and Leveris had the ultimate

authority to act on the behalf of the employer in terminating his employment.  *See*

*Beasley*, 430 F. Supp. 2d at 14, *citing Woodason,* 25 MDLR at 64.  It is clear from the

record that this authority was vested in Mr. Hamilton alone. Thus, Plaintiff's claims

against Defendants Sweatt and Leveris fail under part "a" of the *Woodason* test.  *Id*.

Second, the Plaintiff claims against these two defendants fails part "b" of the test, because there is nothing about the allegedly false reports of threatening conduct that would raise the inference of an "intent to discriminate." *Id.* To the contrary, Mr. Pizzuto concedes that Defendants Sweatt and Leveris may have simply been acting out of dislike for him. (SUF ¶ 16.)

The Plaintiff's evidence is also inadequate to sustain a claim against Defendants Sweatt and Leveris under M.G.L. ch 151B sec. 4(5). It is clear from the record that neither Defendant Sweatt nor Defendant Leveris knew of his supporting role in an unlawful enterprise, or shared the mental state of the principal violator. *See Harmon*, 19 MDLR at 157. The Plaintiff's only contention against Defendants Sweatt and Leveris – that they *lied* to Defendant Hamilton and Airborne to get them to terminate his employment -- is the opposite of aiding and abetting, and cuts against the notion that Defendants Sweatt and Leveris shared the mental state of Defendant Hamilton and Airborne.

Because the facts simply do not support the imposition of individual liability, Defendants Sweatt and Leveris are entitled to summary judgment.

> b.   There are No Facts that Give Rise to Any Liability on the Part of Defendant Hamilton

Similarly, the record does not support individual liability on the part of Defendant Hamilton under G.L. ch. 151B. While Defendant Hamilton did make the decision to terminate, Mr. Pizzuto cannot provide any evidence that Defendant Hamilton's termination of his employment was in deliberate disregard of his rights under ch. 151B leading to the inference that there was intent to discriminate. (*Id.*) Instead, the record demonstrates that Defendant Hamilton terminated Mr. Pizzuto as a result of receiving

numerous reports of Mr. Pizzuto's threatening statements and behavior, including the supposedly false statements by Defendants Sweatt and Leveris. Nothing in the record points to any discriminatory intent by Hamilton, and to the contrary, Mr. Pizzuto concedes that Defendant Hamilton may have simply been acting out of dislike for him. (*Id*.)

Further, in order to establish individual liability under M.G.L. ch. 151B, a plaintiff must show that the individual committed a "wholly individual and distinct wrong," which "must be separate and distinct from the claim in main." *Harmon*, 19 MDLR at 158. The record establishes that the only "wrong" that the Plaintiff identifies for Defendant Hamilton is the termination of his employment, which is precisely the "claim in main." *Id*.

> c. There are No Facts that Give Rise to Any Liability on the Part of Defendant Crossken

It is undisputed that Defendant Crossken did not have any involvement in the Plaintiff's termination. (SUF ¶ 22.) Mr. Crossken had left the Stoneham facility (where the Plaintiff worked) for a job in New Jersey more than four months prior to Plaintiff's termination. (SUF ¶ 19.)

The Plaintiff cannot establish any other actionable discrimination or retaliation on the part of Defendant Crossken. The Plaintiff states that all acts of discrimination and retaliation upon which he bases his claims occurred on or after February 18, 2003. (SUF ¶ 20.) Mr. Crossken left the Stoneham facility mere weeks later, on March 10, 2003. (SUF ¶ 19.) The undisputed evidence establishes that Mr. Crossken did not commit any discriminatory or retaliatory acts between February 18 and March 10, 2003, or at any time thereafter. (SUF ¶ 21.)

The Court should grant summary judgment to Defendant Crossken, simply because it is undisputed that no actionable discrimination or retaliation can be attributed to him.

## IV.  CONCLUSION

For the reasons stated herein and in the accompanying Motion and Affidavits, the Defendants, Airborne Express, Joseph Hamilton, Steven Crossken, Arthur Leveris and Gregory Sweatt, respectfully request that this Court grant them summary judgment on Counts I through IV of the Complaint.

Airborne Express, Inc., Steven
Crossken, Joseph Hamilton,
Greg Sweatt, Arthur Leveris,
By their attorneys,

/s/ C. Max Perlman
C. Max Perlman (BBO# 630395)
Sheryl D. Eisenberg (BBO# 641304)
Sullivan Weinstein & McQuay, P.C.
Two Park Plaza
Boston, Massachusetts 02116
Dated:  October 5, 2007                    (617) 348-4300

CERTIFICATE OF SERVICE

I, C. Max Perlman, attorney for Defendants, do hereby certify that a copy of the foregoing has been duly served upon Plaintiff's Counsel, Richard A. Mulhearn, Esq., at 41 Elm Street, Worcester, MA 01609, via e-mail and first class mail, on this 5th day of October, 2007.

/s/ C. Max Perlman

C. Max Perlman