UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL PIZZUTO<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>AIRBORNE EXPRESS, INC., STEVEN CROSSKEN, JOSEPH HAMILTON, GREG SWEATT, AND ARTHUR LEVERIS,<br><br>　　　　　　　Defendants. | Civil Action No. 04-12492 GAO |

**DEFENDANTS' CONCISE STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, the defendants, Airborne Express, Inc., Joseph Hamilton, Steven Crossken, Arthur Leveris and Gregory Sweatt, hereby submit this Concise Statement of Undisputed Facts in support of their motion for summary judgment. The record support for these facts is included within: (a) the Affidavit of Joseph Hamilton ("Hamilton Aff."), including the exhibits thereto, filed herewith; (b) the Affidavit of C. Max Perlman ("Perlman Aff."), including the exhibits thereto; and the Affidavit of Steven Crossken (Crossken Aff.), filed herewith.

The following material facts are undisputed:

**A.    Mr. Pizzuto's Employment With Airborne and His Termination Therefrom**

1.    In 2003, Plaintiff Paul Pizzuto was employed by Defendant Airborne Express, Inc. ("Airborne") as a driver at its facility in Stoneham, Massachusetts. (Complaint ¶ 9.)

2. On or about July 16, 2003, the station manager, Defendant Joseph Hamilton, began receiving complaints about troubling and threatening statements and behavior by Mr. Pizzuto. On July 16, 2003, Mr. Hamilton received a report from Michael Trudeau, a supervisor at the Stoneham facility, that Mr. Pizzuto had become "irate" with him, began "yelling vulgar language," and threatened to "get the guys" who "did it [caused an issue with his package count]." (Hamilton Aff. at Ex. 1.)

3. Also on July 16, 2003, Mr. Hamilton received a report from another supervisor, Christopher Demmons, stating that Mr. Pizzuto threatened that "He'd fix me…he'd get me" and that Mr. Pizzuto had become a "serious[…] liability to the company and a major disruptive force in the workplace." (*Id*. at Ex. 2.)

4. Also on July 16, 2003, Mr. Hamilton received a report from Bill McClellan stating that Mr. Pizzuto said that "someone was trying to f*** around with him," and that when he found out who it was "there was going to be trouble." (*Id*. at Ex. 3.)

5. Also on July 16, 2003, Mr. Hamilton received a report from Defendant Arthur Leveris stating that Mr. Pizzuto "was out of control, using vulgar language and making threatening statements" and characterizing Mr. Pizzuto as "dangerous to all employees working at [Airborne's Stoneham facility]…" (*Id*. at Ex. 4.)

6. The following week, on July 23, 2003, Mr. Hamilton received another report from Arthur Leveris describing behavior by Mr. Pizzuto that he had witnessed. (*Id*. at Ex. 5.) The report stated that during a video presentation, Mr. Pizzuto was drawing attention to himself and "staring at [Mr. Hamilton] with such a look as if he wanted to fight [Mr. Hamilton]." (*Id*.)

7. On July 24, 2003, Mr. Hamilton received a report from Timothy Carter stating that Mr. Pizzuto had threatened, "you guys are going to get it," "someone is going to get you guys," or words to that effect. (*Id.* at Ex. 6.)

8. On July 24, 2003, Mr. Hamilton received a report from Defendant Greg Sweatt stating that Mr. Pizzuto threatened, "you guys are going to get it" and "all you guys are going to get it." (*Id.* at Ex. 7.)

9. Michael Trudeau informed Mr. Hamilton that on July 24, 2003, Mr. Pizzuto threatened that "you guys are going down big time," "do you have a family Mike?" "Have you ever seen someone die?" "I am not afraid of anyone or anything." "They can shoot me now with one bullet." "I am not afraid to die." (*Id.* at ¶ 11.) Mr. Trudeau made a report in writing to Mr. Hamilton. (*Id.* at Ex. 8.)

10. Mr. Hamilton tried to discuss these incidents with Mr. Pizzuto before he left work on July 24th, but Pizzuto refused. (*Id.* at ¶ 12; Deposition of Paul Pizzuto ("Pizzuto Depo.") at 209.)[1] Hamilton made plans to speak with Mr. Pizzuto the next morning. (Hamilton Aff. ¶ 12.)

11. On the morning of July 25, 2003, before Mr. Hamilton could meet with Mr. Pizzuto, Defendants Sweatt and Leveris each approached Joseph Hamilton and gave reports of an incident they said they had both witnessed earlier in the morning. (Hamilton Aff. ¶ 13.) Mr. Leveris and Mr. Sweatt both reported to Mr. Hamilton that Mr. Pizzuto drove his car into the building at a high rate of speed and jumped out of his car. (*Id.* at Ex. 9, 10.) Mr. Sweatt informed Mr. Hamilton that he "first thought that [Mr. Pizzuto] was planning to jump out of his car and start shooting" and that he "quickly moved out of the way and looked for some type of cover." (*Id.* at Ex. 9.) Mr. Leveris

---

[1] The cited pages of the Pizzuto Depo. are attached as Exhibit 1 to the Perlman Aff.

informed Mr. Hamilton that he "immediately looked for an escape route because of [Mr. Pizzuto's] recent actions and gestures toward NSH management." (*Id*. at Ex. 10.) Mr. Pizzuto now admits that he drove his car into Airborne's facility (or at least up the ramp to the edge of the facility) and on the same day of the incident, he wrote that he was "wrong" to do that. (Pizzuto Depo. at 212-221; Deposition Exhibits 55 and 56[2].)

12. Based on the reports regarding Mr. Pizzuto's behavior on the day before and then the reports from Messrs. Sweatt and Leveris, Mr. Hamilton terminated Mr. Pizzuto. (Hamilton Aff. ¶ 14.) Mr. Hamilton alone made the decision to terminate Mr. Pizzuto. (*Id*.) Mr. Hamilton considered the information and numerous reports that he received over the preceding ten day period from Messrs. Trudeau, Demmons, McClellan, Sweatt, Leveris, Carter. Mr. Hamilton considered whether the information and reports from these men were credible, and determined that it was. (*Id*.) Mr. Hamilton also considered Airborne's policies against workplace violence (*see, id*. at Ex. 11.) and the need for him to provide a safe workplace for his employees. (*Id*. at ¶¶ 14-15.)

13. Mr. Pizzuto does not know of any discriminatory or retaliatory motive that Mr. Hamilton used in terminating him. Instead, Mr. Pizzuto admits that he has no idea what Mr. Hamilton's actions or thoughts were in terminating his employment. (Pizzuto Depo. at 230.) Mr. Hamilton's uncontroverted testimony is that he terminated Mr. Pizzuto because of the reports of his threatening behavior and the fear that these threats would escalate into physical violence in the workplace. (Hamilton Aff. ¶¶ 14-15.)

---

[2] A copy of Deposition Exhibits 55 and 56, which are discussed in the Pizzuto Depo. at 212-221, are attached to the Perlman Aff. as Exhibits 2 and 3, respectively.

14. The only conduct of Defendant Leveris that Mr. Pizzuto contends was discriminatory was "[w]hen he said I was getting out of the car and I was going to start shooting him" and telling Mr. Hamilton about this. (Pizzuto Depo. at 304-305.)

15. The only conduct of Defendant Sweatt that Mr. Pizzuto contends was discriminatory was that he "said I got out of the car and…I was going to start shooting people in the building." (*Id*. at 299-300.)

16. Mr. Pizzuto could not deny that the Defendants may have acted out of dislike for him (as opposed to discriminatory animus). (*Id*. at 307.)

17. While Mr. Pizzuto makes a claim of retaliation, he does not identify any protected activity in which he claims to have engaged, offers no suggestion that his termination was causally linked to any protected activity on his part, and does not have any evidence that his termination was retaliatory in any respect. (*See*, Pizzuto's Answer to Interrog. No. 6, failing to state the basis for his retaliation claim[3].)

**B.    Crossken's Role**

18. On January 14, 2002, Defendant Steven Crossken became District Field Services Manager of Airborne Express's Stoneham Facility. (Crossken Aff. ¶ 2 .)

19. On March 10, 2003, Airborne Express transferred Mr. Crossken to its facility in Hackensack, New Jersey, after which Mr. Crossken had no further input regarding Mr. Pizzuto's employment. (Crossken Aff. ¶ 4 ; Hamilton Aff. ¶ 16.)

20. Mr. Pizzuto does not base any of his claims of discrimination and/or retaliation on acts that occurred before February 18, 2003. (*See*, Pl.'s Answer to Defs.' Interrog. No. 7.) Therefore, any discriminatory or retaliatory acts by Crossken would have had to have occurred between February 18, 2003 and March 10, 2003.

---

[3] The Plaintiff's Answers to the Defendants' Interrogatories are attached as Exhibit 4 to the Perlman Aff.

21. Mr. Pizzuto admits that Crossken did not commit any discriminatory or retaliatory acts between February 18, 2003 and March 10, 2003. (*See*, Pl.'s Answers to Defs.' Interrogs. Nos. 5 and 6.)[4] In fact, Mr. Pizzuto characterizes Mr. Crossken as an "angel" for this time period. (Pizzuto Depo. at 91.)

22. Mr. Crossken had no involvement in Mr. Pizzuto's termination. (Crossken Aff. ¶ 5; Hamilton Aff. ¶ 16.)

                    Airborne Express, Inc., Steven
                    Crossken, Joseph Hamilton,
                    Greg Sweatt, Arthur Leveris,

                    By their attorneys,

                    /s/ C. Max Perlman
                    C. Max Perlman (BBO# 630395)
                    Sheryl D. Eisenberg (BBO# 641304)
                    Sullivan Weinstein & McQuay, P.C.
                    Two Park Plaza
                    Boston, Massachusetts 02116
Dated: October 5, 2007       (617) 348-4300

CERTIFICATE OF SERVICE

I, C. Max Perlman, attorney for Defendants, do hereby certify that a copy of the foregoing has been duly served upon Plaintiff's Counsel, Richard A. Mulhearn, Esq., at 41 Elm Street, Worcester, MA 01609, via e-mail and first class mail, on this 5th day of October, 2007.

                    /s/ C. Max Perlman
                    C. Max Perlman

---

[4] In Interrogatory Nos. 5 and 6, the Defendants asked Mr. Pizzuto to "state the basis …for your claim that Defendants [discriminated/retaliated] against you on the basis of your disability or handicap(s)." Mr. Pizzuto's answers do not refer to any discriminatory or retaliatory act by Mr. Crossken. In fact, Mr. Pizzuto's answer fails to refer to Mr. Crossken at all.