UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL PIZZUTO<br>              Plaintiff,<br>vs.<br>AIRBORNE EXPRESS, INC., STEVEN CROSSKEN, JOSEPH HAMILTON, GREG SWEATT, AND ARTHUR LEVERIS,<br>              Defendants. | Civil Action No. 04-12492 GAO |

<u>DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT</u>

Defendants Airborne Express, Inc. ("Airborne"), Joseph Hamilton, Steven Crossken, Arthur Leveris and Gregory Sweatt ("Defendants"), hereby respond to Plaintiff Paul Pizzuto's ("Plaintiff" or "Pizzuto") Opposition to Defendants' Motion for Summary Judgment. The Plaintiff has failed to raise genuine issues of material fact on any of the four remaining claims in this case. Instead, Plaintiff tries to raise a claim for failure to accommodate, for the first time, at summary judgment. This claim should be rejected due to the Plaintiff's failure to properly raise it, and would fail as a matter of law even if it had properly been raised. Plaintiff essentially concedes that he has no valid claims against the four individual defendants and no claim for retaliation. Further, Plaintiff has failed to establish any reasonable expectation of proving, as he must, that his termination was motivated by unlawful discrimination.

**I.      <u>Plaintiff's Failure to Accommodate Claim Fails</u>.**

     **A.      Plaintiff Never Raised This Claim In His Complaint Or In Discovery.**

Pizzuto sets forth his reasonable accommodation claim <u>for the first time</u> in his Opposition. (See Opposition, Part III – B). A claim for failure to accommodate is a separate and distinct claim from unlawful termination. *See Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 258-59 (1st Cir. 2001) (comparing the different burdens of production and persuasion for a

reasonable accommodation claim to those for a discrimination claim). Pizzuto, however, failed to raise a claim of reasonable accommodation in either his Complaint or in discovery.

"It is well-settled that plaintiffs are generally not permitted to raise brand new theories of their case in opposition to a motion for summary judgment, particularly where … they have been given ample latitude to amend their complaint." *Diomed, Inc. v. Vascular Solutions, Inc.,* 417 F.Supp.2d 137, 141 (D.Mass. 2006). Furthermore, "[a] plaintiff is not entitled to present affidavits and reach the summary judgment stage if [his] complaint, on its face, reveals an inadequate basis for [his] claim." *Jacob v. Curt*, 898 F.2d 838, 839 (1st Cir. 1990). Here, there is no basis in the Complaint for a failure to accommodate claim (see Complaint), and thus, Pizzuto cannot now defeat summary judgment on this claim.

Likewise, Pizzuto also failed to inform Defendants of this claim during discovery. In Defendant's interrogatories to the Plaintiff, Defendant specifically requested that Pizzuto "state the basis (in accordance with Rule 26.5(C)(8) of the Local Rules) for your claim that Defendants discriminated against you on the basis of your disability or handicap(s)." In his interrogatory answer, Pizzuto did not mention, let alone identify, <u>any</u> facts that indicated he based any of his claims against the Defendants on an alleged failure to accommodate his disability. (Plaintiff's Answers to Interrogatories of Defendants, Answer No. 6.)

      **B.**    **Even If Plaintiff Had Properly Made A Reasonable Accommodation Claim, It Would Not Survive Summary Judgment.**

Even if properly set forth, Plaintiff's failure to accommodate claim would still be unsuccessful at summary judgment. Plaintiff's Statement of Material Facts ("Plaintiff's Stmt. of Facts") sets forth his desired accommodation: "Plaintiff states that the accommodation he needed was going back on short-term disability. Plaintiff does not know how long he would have needed to be out." (¶ 91.) In other words, Plaintiff contends that an indefinite leave of absence

2

would reasonably accommodate his alleged disability.  To be clear, this proposed accommodation is only proposed by Pizzuto well after the fact; he admits that he did not request this or any other accommodation prior to being terminated by Airborne.  (Pizzuto Depo. p. 294, Ex. 8 to Plaintiff's Stmt. of Facts.)

To stave off summary judgment on a reasonable accommodation claim, a plaintiff must "produce enough evidence for a reasonable jury to find that (1) he was disabled within the meaning of the ADA, (2) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant] despite knowing of his disability, did not reasonably accommodate it.  *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 107 (1st Cir. 2005).  Even if Pizzuto could establish that during his employment he was disabled under the law,[1] he is not a qualified disabled person because he was terminated for threatening conduct.  He also cannot show that Defendants had knowledge of his disability or need for accommodation.  Further, an indefinite leave of absence is not reasonable as a matter of law.

> **1.    *Plaintiff was not capable of performing the essential functions of his job because he was terminated for misconduct.***

Pizzuto is not entitled to a reasonable accommodation claim.  It is undisputed that Defendant Hamilton terminated the Plaintiff after receiving ten reports of threats and threatening behavior from six separate supervisors in the days immediately preceding the termination claim.  (See Affidavit of Joseph Hamilton, ¶¶ 4-15.)  Under these circumstances, the law does not permit

---

[1] Pizzuto has never made a showing that at the time of his employment he was disabled within the meaning of the ADA.  He admits in his Opposition that he "was not actually diagnosed with bipolar disorder until late 2005" – over two years after he was terminated.  (See Opposition, p. 17.)  He also sets forth that neither of the doctors he consulted could confirm that he suffered from bipolar disorder at the time of his termination.  (See id*.,* pp. 18, 19). Therefore, Pizzuto may only argue that Defendants failed to accommodate his known disabilities, at the time of his employment.  *See Kalekiristos v. CTS Hotel Management Corp*, 958 F.Supp. 641, 657 (D.D.C. 1997) (a Plaintiff suing under the ADA must provide documentation of the existence of a disability during the time of employment and not following termination because allowing for the production of documentation after termination would render the requirement of a physical impairment meaningless and could hold an employer liable for a disability of which it was not aware).  Accordingly, Pizzuto's reasonable accommodation claim is dependent on showing that insomnia, sleep apnea, acid reflux, anxiety disorder, inability to cope, stress, tremor, poor concentration, and "lack mechanism to cope" constitute disabilities under the ADA.  (See Plaintiff's Stmt. of Facts, ¶15.)

the Plaintiff to claim that he was not reasonably accommodated. *See Calef v. The Gillette Co.*, 322 F.3d 75, 86 (1st Cir. 2003) (affirming summary judgment for defendant employer and rejecting reasonable accommodation claim due to plaintiff's threatening behavior, and openly questioning whether reasonable accommodation can play *any* role in a case involving a termination for threatening behavior) *citing to Palmer v. Circuit Court of Cook County*, 117 F.3d 351, 353 (7th Cir. 1997) (affirming summary judgment on the grounds that employer does not have duty to accommodate employees who commit or threaten violent acts).

An employee "whose unacceptable behavior threatens the safety of others" is not "otherwise qualified" for purposes of the disability laws, even if the conduct stems from a disability.[2]  *Calef*, 322 F.3d at 86-87, *and cases cited therein*; *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 262 (1st Cir. 2001) ("The ADA is not a license for insubordination in the workplace"); *Garrity v. United Airlines, Inc*., 421 Mass. 55, 61-63 (1995), quoting *Wilber v Brady*, 780 F. Supp. 837, 840 (D.D.C. 1992)("[a] disabled individual cannot be 'otherwise qualified' for a position if he commits misconduct which would disqualify an individual who did not fall under the protection of the statute"). *Mammone v. President and Fellows of Harvard College*, 446 Mass. 657, 679 (2006), holds the same for reasonable accommodation claims pursuant to M.G.L. c. 151B: "[A] handicapped employee who engages in egregious misconduct, sufficiently inimical to the interests of his employer that it would result in the termination of a nonhandicapped person within the meaning of G.L. c. 151B, … is not entitled to the protection of that statute."

*Mammone* is particularly instructive in this case, because the plaintiff suffered from bipolar disorder and major recurrent depression. *See* 446 Mass. at 660. Despite evidence that

---

[2] A "qualified handicapped individual" is one who is capable of performing the essential functions of a particular job with or without reasonable accommodation to his handicap. *Calef*, 322 F.3d at 86; M.G.L. c. 151B § 1(16). Conformance to workplace codes of conduct is a well-established "essential function" of the positions held by most employees, and here, it is likewise undisputed that refraining from threatening conduct is an essential function of Plaintiff's job . (Pizzuto Depo. p 79-82, Ex. A to Second Affidavit of Max Perlman ("Second Perlman Aff.")).

4

the employee's misconduct arose out of a manic episode, and arguments that the employee could perform his job in the future if provided with a reasonable accommodation, the court found that the employee's misconduct precluded him from "performing the essential functions of the position" with or without a reasonable accommodation. *Id.* at 669-70. *See also* MCAD Guidelines: Employment Discrimination on the Basis of Handicap, at Section X(D) (an employee who poses a direct threat to others is not "qualified" under Chapter 151B).

The First Circuit's decision in *Calef* is similarly instructive. First, the Court openly questions whether reasonable accommodation plays any role in a case involving threatening behavior. *Calef*, 322 F.3d at 87 and n.11. Then, the Court goes on to reject the plaintiff's reasonable accommodation claim – the plaintiff said that he should have been offered leaves of absence – for reasons that are strikingly similar to the ones present in this case, to wit, episodic and unpredictable manifestations of anger. *Id*.

Further, Pizzuto may not rely on his contention that there is a factual dispute about whether Plaintiff committed the acts reported to Mr. Hamilton as indication of a genuine issue for trial.[3] Plaintiff's termination was lawful as long as Mr. Hamilton in good faith believed the reasons he had for discharging the Plaintiff. *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st. Cir. 2006) (plaintiff's denial of wrongdoing not enough to raise material issue of fact); *Mesnick v. Gen. Elec. Co*., 950 F.2d 816, 824 (1st Cir. 1991) ("It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive …'"). *See also Green v. National Steel Corp*., 197 F.3d

---

[3] Incredibly, with respect to the ten contemporaneous written reports of threats from six different supervisors, Pizzuto simply denies making any and all of the statements attributed to him and adds "if I did [make threats], I can't recall it." (Plaintiff's Stmt. of Facts ¶¶ 84-86.)

894, 899 (7th Cir. 1999) ("plaintiff's bald assertions that she did not engage in the misbehavior alleged by the company are insufficient to create a material dispute").

Having failed to offer evidence sufficient to demonstrate that he is a qualified handicapped individual within the meaning of the statutes, Plaintiff cannot proceed under a claim that Defendants failed to accommodate his disability. According to the First Circuit, it is "questionable whether the reasonable accommodation analysis plays any role" in a case where an employee's unacceptable behavior threatens the safety of others, even if that behavior stems from a mental disability. *Calef,* 322 F.3d at 87, n.11. The Court's analysis should end here.

### 2. *Plaintiff did not make a request for accommodation and refused to participate in any interactive process.*

Plaintiff never requested an accommodation from Defendants during his last period of employment. His request for a leave of absence was raised in hindsight. In contrast, in October 2002, Plaintiff did request, and was granted, a leave of absence to address an array of difficulties, including insomnia, sleep apnea, acid reflux, tremor, poor concentration, and anxiety. (Plaintiff's Stmt. of Facts ¶¶ 15-19.) It is reasonable to infer that Plaintiff knew the procedure for requesting a leave of absence and that a request was necessary.

Furthermore, Plaintiff made no effort to put Defendants on notice that he might need a reasonable accommodation: at no time from February 2003 (when he returned to work) until his termination did Pizzuto inform any of the Defendants he was suffering from a relapse of his prior condition or a new condition. Though Plaintiff's Opposition relies heavily on his current diagnosis of bipolar disorder, any reliance on diagnoses subsequent to his termination are unavailing to Plaintiff, as the diagnosis came more than two years after Pizzuto was terminated. *See Kalekiristos v. CTS Hotel Management Corp*, 958 F.Supp. 641, 657 (D.D.C. 1997). Defendants could not accommodate a condition that they were unaware of. An employer cannot

6

be held liable for failing to accommodate the limitations flowing from a disability where the employer is not aware of the disability. *Estades-Negroni v. Associates Corp. of North America,* 377 F.3d 58, 64 (1st Cir. 2004).

As far as Defendants knew, Plaintiff was not suffering from his prior conditions. When Plaintiff returned from his leave of absence in February 2003, he was cleared by his physician to return to work with no mention of any restrictions or limitations. (See Ex. C to the Second Perlman Affidavit, which is a note from Plaintiff's doctor, clearing his return to work). Plaintiff's suggestion that somehow Defendants should have interpreted Pizzuto's threatening conduct as a manifestation of his prior conditions (insomnia, sleep apnea, acid reflux, tremor, poor concentration, and anxiety) is unreasonable as it would require Defendants to act as diagnosticians. *See Reed,* 244 F.3d at 260-61 ("[t]he ADA imposes liability on an employer for 'not making reasoning accommodations to the *known* physical or mental limitations' of an employee.") (quoting 42 U.S.C. § 12112(b)(5)(A) (emphasis added)).

Moreover, even though Plaintiff did not disclose his alleged bipolar disorder (which he could not have, as his diagnosis occurred more than two years after his termination from Airborne), or a relapse of his prior condition, Defendants met and exceeded their duty to engage Pizzuto in the "interactive process." The interactive process is designed to be informal and a means of uncovering potential accommodations. *Tobin v. Liberty Mutual Ins. Co.,* 433 F.3d 100, 108 (1st Cir. 2005). In accordance, Defendants made efforts to communicate with Pizzuto about possible explanations for his behavior. After receiving ten troubling reports over a ten day period from six different Airborne employees, Hamilton made an effort to meet with Pizzuto to discuss the threats, but Pizzuto refused. (Defendants' Statement of Undisputed Facts ("SUF"), ¶ 10). On July 25, 2003, Plaintiff was specifically asked by Mr. Hamilton, multiple times, "Can

we help you?" (Plaintiff's Stmt. of Facts ¶ 74). Pizzuto did not request an accommodation or disclose any disability at that time. Instead, he demanded his discipline and to leave. (*Id.*)

Additionally, the day before Pizzuto's termination, Airborne tried to engage him in a conversation about his threatening behavior and determine if they could get him help. Defendant Hamilton conferred with Pizzuto's union representatives and jointly decided that the union representatives would speak with him at the end of the day and "ask him if he needed help" and "offer the union's disability benefits and refer him to the Teamster doctor for help." (Plaintiff's Stmt. of Facts ¶ 56.) When the union representatives tried to have this conversation with Pizzuto, he refused to accept any help or discuss the matter. (*Id.* at 59.)

Pizzuto's conduct effectively cut off any possibility of continuing an "interactive process" with Defendants, thereby precluding a finding that Defendants failed to reasonably accommodate him. *See Bryant v. Caritas Norwood Hosp.*, 345 F.Supp.2d 155, 169-70 (D.Mass. 2004); *see also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir.1997) (rejecting reasonable accommodation claim where employee's actions cause a breakdown in the interactive process); *Rennie v. United Parcel Serv.*, 139 F.Supp.2d 159, 172-73 (D.Mass. 2001) (plaintiff employee's "complete failure to continue to engage in the interactive process ... prevented [her employer] from making further attempts to reasonably accommodate her" and precluded finding that employer failed to reasonable accommodate employee).

### 3.    *Plaintiff's desired accommodation is not reasonable.*

Finally, Pizzuto's concocted accommodation simply is not reasonable. "Under the ADA, the plaintiff bears the burden of proving that the defendant could provide a reasonable accommodation for her disability." *Reed,* 244 F.3d at 258. This means that the plaintiff must show both that the accommodation would effectively enable him to perform his job, and that,

"on the face of things, it is feasible for the employer under the circumstances." *Id.* at 259. As an initial matter, plaintiff's claim fails because, during his employment, Pizzuto never suggested an accommodation that would enable him to perform his job in conformity with Airborne's policies against workplace violence. *See Marzano v. Universal Studio, Inc.*, No. Civ. A. 02-10449-GAO, 2003 WL 21696213, at *3 (D. Mass. 2003) (Ex. D to Second Perlman Aff.); (Pizzuto Depo. p. 294-295, Ex. 8 to Plaintiff's Stmt. of Facts). Rather, more than four years after his termination, Pizzuto now claims for the first time, that Airborne could have accommodated his disability by permitting him a leave of absence. Pizzuto had "no idea" as to how long or how many leaves of absence he would need. (Pizzuto Depo. p. 294-295).

Here, Pizzuto fails to show how an indefinite leave of absence would effectively enable him to perform his job. *See Reed,* 244 F.3d at 259. At his deposition, Plaintiff testified that the proposed leave of absence would have helped him because it would have kept him from getting fired. (Pizzuto Depo. p. 294-295, Ex. 8 to Plaintiff's Stmt. of Facts.) He does not explain how the leave would enable him to perform the essential functions of his position, only that if he were on leave, he would not be terminated. Further evidencing Plaintiff's inability to show how this leave would enable him to perform his job, Plaintiff cannot even estimate how long this leave would last. (See id.) There is no evidence that the requested accommodation would have changed his disabled status or would have likely contributed to his recovery.[4] For a leave of absence to constitute an effective accommodation, it must be instrumental to affect or advance a change in the employee's disabled status with respect to the job…" *Garcia-Ayala v. Lederle*

---

[4] Plaintiff attempts to rely on the testimony of Dr. Mark Sadowski for the notion that the leave would have been helpful to Plaintiff. (Plaintiff's Stmt. of Facts, ¶ 98.) This is misguided. First, Dr. Sadowski does not testify regarding any prospect for recovery, only to the vague notion that a leave of absence could "possibly" be "helpful" to Pizzuto. Second, "the prospect of recovery…should not be judged by hindsight, but by what reasonably appears at the time the leave is requested." *Garcia-Ayala v. Lederle Parenterals, Inc*., 212 F.3d 638, 655 (1st Cir. 2000) (O'Toole, J., dissenting) *citing Evans v. Federal Express Corp*., 133 F.3d 137, 140 (1st Cir. 1998). Dr. Sadowski did not treat Pizzuto in 2003, when Pizzuto was terminated, and the two men met for the first time on September 15, 2005, more than two years later. (Deposition of Mark Sadowski, p. 8 – Ex. B to Second Perlman Aff.).

9

*Parenterals, Inc*., 212 F.3d 638, 655 (1st Cir. 2000) (O'Toole, J., dissenting); *see also Calef*, 322 F.3d at 87 n.11 (short periods of leave which did not alleviate plaintiff's threatening and abusive behavior were not reasonable accommodations because they would not enable plaintiff to perform essential functions of his job).  The leave must be for the purpose of allowing the employee to recover from the disability, and the recovery must be "reasonably likely." *Garcia-Ayala*, 212 F.3d at 655 (O'Toole, J., dissenting); citing *Evans v. Federal Express Corp.,* 133 F.3d 137, 140 (1st Cir. 1998) ("one element in the reasonableness equation is likelihood of success.")  Here, the Plaintiff identifies no such purpose.  Instead, it is clear from his testimony that Pizzuto is merely trying to use the idea of an accommodation as a shield from termination.  Under these circumstances, summary judgment is proper.  *See Marzano*, 2003 WL 21696213 (D. Mass. 2003) (summary judgment granted where employee could not suggest any accommodation that would enable him to perform the essential functions of his job).

     Not only has Plaintiff failed to show that his leave would be effective, his belated revelation, made in hindsight, that he might have benefited from additional leaves of absence (unspecific in number or duration) is not facially "reasonable."  "A reasonable request for an accommodation must in some way consider the difficulty or expense imposed on the one doing the accommodating." *Reed,* 244 F.3d at 259.  Here, Plaintiff's proposed accommodation fails to take into consideration the following: the cost to the Defendants of keeping a job open indefinitely; the uncertainty as to when the Plaintiff would return and that the Plaintiff might require future leaves; the failure to explain to the Defendants the purpose of the leave; and the problem of subjecting the Plaintiff's co-workers to his threatening behavior upon his return.  The First Circuit has found all of these factors to indicate that a leave of absence is unreasonable: "where the employee gave no indication as to when she might be able to return to work, and

10

instead, she simply demanded that her job be held open indefinitely; where an employee's absences from work were 'erratic' and 'unexplained,'; where, upon the employee's return to work, she would be unqualified …" *See Garcia-Ayala,* 212 F.3d at 650 (internal citations omitted). Accordingly, Plaintiff's proposed indefinite leave, without any apparent prospect of a return to work, is not reasonable. *See, e.g., id.*; *Rose v. Laskey*, 110 Fed.Appx.136, 138, 2004 WL 2180787 (1st Cir. 2004) (unpublished decision) (leave of absence of unspecified length was not reasonable, and even if temporary, unreasonable due to threatening conduct) (Ex. E to Second Perlman Aff.); *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 455-56 (2002) (citing numerous cases holding same and finding indefinite leave not reasonable under c. 151B).

Though Plaintiff has not met his burden in showing that an indefinite leave of absence requested in hindsight is a reasonable accommodation, even if Plaintiff did so, the indefinite leave of absence would be an undue burden on Defendant Airborne. *See Reed*, 244 F.3d at 259 (explaining that if plaintiff successfully proves the proposed accommodation is reasonable, the defendant then has the opportunity to show that the proposed accommodation is not as feasible as it appears, that there are further costs to be considered, "certain devils in the details."). Here, Plaintiff places Defendants at a particular disadvantage as they cannot calculate the burden of an accommodation that was not requested and is a leave of unknown duration. Defendant cannot calculate the cost of providing a replacement for Pizzuto as it is unknown whether they would need a temporary replacement in the case of a leave of a few days, or even weeks, or whether they would need a long term replacement for a leave of several months.

II.    **This Court Should Dismiss The Claims Plaintiff Fails To Meaningfully Address.**

    A.    **Plaintiff Fails To Rebut Defendants' Argument About Retaliation.**

Plaintiff's Opposition fails to even address, let alone rebut, Defendants' contention that Plaintiff has not identified any factual basis for his retaliation claim. *See* LR 7.1(B)(2) ("A party

opposing a motion shall file an opposition to the motion ….[and] a memorandum of reasons, including citation of supporting authorities, why the motion should not be granted."). "A party who aspires to oppose a summary judgment motion must spell out his arguments squarely and distinctly, or else forever hold his peace. [internal citations omitted] The district court is free to disregard arguments that are not adequately developed … ." *Higgins v. New Balance Athletic Shoes, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999). Accordingly, this Court should grant Defendants' motion for summary judgment on Plaintiff's retaliation claim.

      **B.**    **Plaintiff Fails To Adequately Address Defendants' Argument Concerning The Liability Of The Individual Defendants.**

Plaintiff's Opposition does not adequately address Defendants' assertion that there is no basis to impose individual liability on Defendants Steven Crossken, Joseph Hamilton, Greg Sweatt, and Arthur Leveris. As Defendants set forth in their Memorandum of Law (pp. 14-20), there is no support in the First Circuit for individual liability under the ADA. Plaintiff fails to respond in any way to this argument. Additionally, Plaintiff makes no showing that any of the individual Defendants knew of their substantial supporting role in an unlawful enterprise and shared the mental state of the principal violator, necessary to maintain an aiding and abetting claim under state law. *See Harmon v. Malden Hospital,* 19 MDLR 157 (1997) (attached as Ex. 5 to Perlman Aff.), *cited with approval by Beaupre v. Cliff Smith Associates*, 738 N.E.2d 753, 764 (Mass. App. Ct. 2000). Further, Plaintiff's Opposition fails to allege sufficient facts to meet the test for individual liability, set forth in Defendants' Memorandum of Law and in *Woodason v. Norton Sch. Comm.*, 25 MDLR 62, 64 (2003) (attached as Ex. 6 to Perlman Aff.).

Moreover, Plaintiff's Opposition rebuts Defendants remaining arguments in a cursory manner. Plaintiff does not address the assertion that claiming Defendants Sweatt and Leveris lied to Defendant Hamilton cuts against the notion that they shared the mental state of

Defendants Hamilton and Airborne, necessary for an aiding and abetting showing. While the Opposition claims that the case against Hamilton is "straightforward" because he was the decision maker, it fails to provide any evidence as to how the decision was in deliberate disregard of Plaintiff's rights under Chapter 151B. Further, the Plaintiff does not address that, in order to establish individual liability under Massachusetts law, the individual's "wrong" "must be separate and distinct from the claim in main." *Harmon*, 19 MDLR at 158.

Plaintiff's Opposition also neglects to illuminate any facts which would indicate that the complained of acts of Defendants Hamilton, Leveris, Sweatt, or Crossken would raise the inference of an "intent to discriminate." *See Woodason*, 25 MDLR at 64. With regard to Defendant Sweatt, Plaintiff merely restates his allegations that Defendant Sweatt exaggerated and mischaracterized the ramp incident. *See* Opposition, p. 35. The Opposition further betrays the lack of discriminatory intent in Defendant Leveris's actions by explaining that his involvement in the termination meeting and drug testing was due to his position "as second in command." Plaintiff all but concedes that individual liability for Defendant Crossken is a losing argument. *See id.* at p. 36 ("Crossken is the more difficult case"). Plaintiff fails to establish any facts that would give rise to claims against Crossken under 151B §4(4).

### III. Defendants Did Not Concede Plaintiff's Prima Facie Case.

Plaintiff's Opposition attempts to argue that Defendants "concede" the Plaintiff's prima facie case. (See Opposition, p. 27). Defendants make no such concession. It is Pizzuto's burden, as the Plaintiff in an employment discrimination case, to establish his prima facie case. *See Straughn v. Delta Airlines, Inc.*, 250 F.3d 23, 22 (1st Cir. 2001). Accordingly, Defendants have focused their summary judgment argument on meeting their own burden at summary judgment - the burden of articulating that Plaintiff's employment was terminated for a legitimate, non-discriminatory reason. *See Azimi,* 456 F.3d at 242. It does not follow that simply because

Defendants' assumed *arguendo* for the purposes of Summary Judgment that Plaintiff could establish a prima facie case (strictly to demonstrate that, even then, he could not show that the employment decision involved unlawful discrimination), that Plaintiff has indeed established his initial burden of a prima facie case for disability discrimination. Defendants made this evident on page 10, footnote 6, of their Memorandum of Law:

> While the Plaintiff would have a very difficult time establishing a prima facie case of discrimination were this case to reach trial, this motion does not address the elements of the prima facie case, and instead focuses on the plaintiff's requirement to show pretext and discrimination after the burden shifts back to the plaintiff.

The focus of Defendants' argument is in keeping with the analysis that courts often employ at summary judgment. A number of courts "put aside" the question of whether a plaintiff has established a prima facie case and instead turn to "whether there is evidence that, notwithstanding the employer's stated reasons for the termination, the real reason, at least in part, was … discrimination." *Hillstrom v. Best Western TLC Hotel,* 354 F.3d 27, 31 (1st Cir. 2003); *Freadman v. Metro. Prop. and Cas. Ins. Co.,* 484 F.3d 91, 100 (1st Cir. 2007); *Fennel v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir. 1996). Courts frequently bypass the prima facie case issue where it is clear that a plaintiff has not mustered enough evidence for a reasonable jury to conclude that an employer's reasons for an adverse action was pretextual. *Freadman,* 484 F.3d at 100. This is precisely Defendants' argument - Plaintiff has not, and cannot, show pretext - rendering an analysis of his prima facie case superfluous.

**IV.    Plaintiff Fails To Present Enough Evidence To Survive A Mixed Motive Analysis.**

Employing the faulty reasoning that Defendants concede Plaintiff's prima facie case, Plaintiff's Opposition attempts to create a genuine issue for trial by arguing that a mixed motive analysis is applicable. (See Opposition, p. 27). Defendants have not conceded that discrimination played a role in the termination decision. Even if Defendants assumed *arguendo*

14

Plaintiff's prima facie case, it does not follow that Defendants' concede a discriminatory motive. This argument ignores the main thrust of Defendants' summary judgment argument: that Plaintiff was terminated for threatening statements and behavior and unlawful discrimination played no part in the decision to terminate his employment.

In invoking the mixed motive analysis, Plaintiff fails to see the larger picture at summary judgment in an employment discrimination case. Courts have found in some cases, particularly in light of *Desert Palace Inc. v. Costa*, 539 U.S. 90 (2003), that it makes no difference whether a case is analyzed under the *McDonnell Douglas* or mixed-motive approach. *See Hillstrom,* 354 F.3d at 31. "[E]ven in mixed-motive cases, plaintiffs must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias." *Id.* "On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus." *Fennel,* 83 F.3d at 535.

Last, even if a mixed motive analysis does apply, Plaintiff has not met his burden. Pizzuto must "present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias." *Hillstrom,* 354 F.3d at 31. Pizzuto's attempt to characterize Defendants' observations of his increasingly erratic behavior as evidence of forbidden bias fails. Plaintiff contends that observations of his paranoid behavior, disturbing remarks, and that "something was not right" with Pizzuto, is evidence of differential treatment and forbidden bias.

He also submits that because Leveris, Sweatt, and Hamilton reacted in a fearful manner when he drove up the ramp that he was stigmatized.

Plaintiff cannot claim that legitimate fears about his behavior were motivated by stereotypes about the disabled where the reported reactions of his co-workers and supervisors were entirely reasonable, and there is no evidence they were not genuine. *See Calef*, 322 F.3d at 87 n.9 (employees' and supervisors' observations that plaintiff was "irrational, belligerent and sarcastic" and "uncooperative, provocative, hostile, and threatening" could not be used to bolster plaintiff's argument that he was perceived as disabled). None of the comments or actions set forth by Plaintiff evidence discrimination, or a bias against disabled persons. *See Straughn,* 250 F.3d at 36 (discussing discriminatory comments). Comments that do not display discriminatory animus, but rather observe facts, are not probative of discrimination. *See Lauren v. Providence Hospital,* 150 F.3d 52, 57 (1st Cir. 1998) (supervisors' observations concerning plaintiff's disability not suspect, where observations were similar to those made by plaintiff's physician). *See also Vesprini v. Shaw Contract Flooring Svcs., Inc.*, 315 F.3d 37, 43 (1st Cir. 2002) (noting that such inherently ambiguous assertions normally are not "direct evidence" of discriminatory animus); *Fernandes v. Costa Bros. Masonry, Inc*., 199 F.3d 572, 583 (1st Cir.1999).

To the extent Plaintiff argues his behavior was a manifestation of his alleged bipolar condition, he cannot rely upon evidence prior to his disclosure of disability to show malice or discriminatory animus. *See Tobin*, 433 F.3d at 105. The same holds true for the supposition that his threatening conduct was a manifestation of previously disclosed conditions. Pizzuto was cleared to return to work in February 2003 and never disclosed a relapse in his condition.

Evidence of Defendants' deliberations in making the safest decision for their workplace is not evidence of discrimination. "Put simply, the ADA does not require that an employee

16

whose unacceptable behavior threatens the safety of others be retained, even if the behavior stems from a mental disability. Such an employee is not qualified." *Calef,* 322 F.3d at 87. Defendants' responded appropriately to an employee's increasingly erratic behavior. They attempted to meet with him to discuss the threatening behavior and withheld disciplining Pizzuto until his threats reached the point that they involved physical conduct.

## V.     Plaintiff Has Failed To Show Pretext In The Termination Decision.

Last, though Plaintiff's Opposition inundates the Court with a mass of irrelevant facts in an attempt to create a disputed issue of fact, it ultimately fails to establish that unlawful discrimination played any role in his termination. An employer is entitled to summary judgment:

> if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000). In this case, there is conclusive evidence of a non-discriminatory reason: Hamilton terminated Pizzuto because of safety concerns stemming from approximately ten reports from six different people that the Plaintiff was acting in a threatening manner. (SUF ¶¶ 2-13.)

Moreover, at best, Plaintiff offers only "weak issue[s] of fact" in support of his claim of pretext. *See Reeves,* 530 U.S. at 148. Plaintiff's attempt to establish pretext, on pages 23-26 of the Opposition, boils down to the following: 1) the Defendants knew that Plaintiff had mental health problems; 2) the Defendants performed audit scans on the Plaintiff's truck; 3) the Defendants delayed (a few hours) in getting a paycheck to the Plaintiff; and 4) the "ramp incident" was not as frightening as the Defendants/eyewitnesses say that it was. These stated grounds for pretext fall woefully short of refuting Airborne's evidence that he was terminated for threatening behavior, or forwarding the premise that the reason for his termination was pretext.

17

Taking plaintiff's grounds in turn: First, Defendants' mere knowledge of Plaintiff's alleged mental health problems is not evidence of pretext. Second, Plaintiff complains about the audit scans (a taking of inventory) performed on his truck, but fails to point out that he basically requested these audit scans, himself. According to Plaintiff, in 2003, he began to notice that packages were "disappearing" from his truck, and he told Hamilton about this. (Plaintiff's Stmt. of Facts ¶ 26.) These comments prompted the need for the audit scans and they cannot be interpreted in any way to support a finding of pretext. Third, Plaintiff says he expected a paycheck at the beginning of a day, but got it at the end of the day. Again, even if this is true, there is no suggestion that this is in any way indicative of an intent to discriminate, and is patently de minimus. These first three asserted grounds for pretext are nothing better than "weak issue[s] of fact" that are insufficient to stave off summary judgment. *See Reeves*, 530 U.S. at 148. Furthermore, these grounds are insufficient because they rest "merely upon conclusory allegations, improbable inferences, and unsupported speculation." *See Azimi,* 456 F.3d at 241.

The main focus of Plaintiff's Opposition appears to be the fourth point – his contention that there is a material issue of fact as to whether the "ramp incident" was a true threat of violence. The Plaintiff focuses on purported distinctions in the perceptions of Defendants Sweatt and Leveris, on the one hand, and Joseph Sambartaro, on the other hand. The Plaintiff misses the mark with this. First, any disagreement between Sweatt/Leveris and Sambartaro is irrelevant, because it is undisputed that neither Sweatt nor Leveris made the decision to terminate the Plaintiff. Instead, Defendant Hamilton alone made the decision to terminate. At that time, Hamilton had received written reports of ten incidents of threats by Pizzuto and the reports from Sweatt and Leveris regarding the ramp incident. It is Mr. Hamilton's belief that is relevant, not the perceptions of Defendants Sweatt and Leveris. *See Azimi*, 456 F.3d at 246.

18

Second, the purported differences in perspective on the ramp incident do not create a genuine issue of material fact. It is inconsequential that Sambartaro – a co-worker of Pizzuto who admits that he did not even see Pizzuto drive in to the dock – perceived the situation differently than Sweatt and Leveris. Nothing in Sambartaro's testimony in any way negates the shared perspectives of Sweatt and Leveris – both of whom were Pizzuto's supervisors and had been targets of previous and recent threats by Pizzuto – that this was a real threat. In a contemporaneous memo, Leveris said that his fearful reaction was "[because] of [Pizzuto's] recent actions and gestures towards [Airborne] management." (Plaintiff's Stmt. of Facts, Ex. 10.)

Plaintiff claims that another triable issue is "whether the ramp incident was truly the reason for Plaintiff's termination or whether instead it was how the Plaintiff responded to Hamilton's confusing and misunderstood remarks concerning Plaintiff getting medical help." (Opposition at p. 25.) It is not exactly clear what Plaintiff means by this, but it seems to refer to the conversation that Pizzuto and Hamilton had on the day of the termination. Hamilton asked Pizzuto if they could help him; Pizzuto rejected Airborne's offer to help and demanded that Airborne issue its discipline. Hamilton, having received the ten reports of threats, and then a demand for discipline, terminated the Plaintiff. There is no basis, under these facts, that Hamilton considered anything that he was not entitled to consider in terminating the Plaintiff.

In sum, in order to generate a trialworthy issue, Pizzuto must show that Mr. Hamilton was unreasonable in believing that Pizzuto should be terminated for making the many reported threatening statements and for driving his car up the ramp in a threatening manner. Plaintiff has not put forth sufficient evidence – in the face of Defendants' overwhelming evidence that numerous persons employed at Airborne perceived and reported Pizzuto's conduct as threatening – to suggest that this decision was pretext for unlawful discrimination.

19

Instead, under the undisputed facts, the termination of Paul Pizzuto was Airborne's only option under the circumstances. As Judge Posner aptly stated in the *Palmer* case:

> The [ADA] does not require an employer to retain a potentially violent employee. Such a requirement would place the employer on a razor's edge – in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone.

117 F.3d at 352. If Airborne had acted differently, it risked tragic consequences. Any result other than summary judgment in this case would send an improper and potentially dangerous message to employers faced with this dilemma.

## VI. CONCLUSION

For the reasons stated herein, the Defendants respectfully request that this Court grant them summary judgment on Counts I through IV of the Complaint.

|  |  |
|---|---|
|  | Airborne Express, Inc., Steven Crossken, Joseph Hamilton, Greg Sweatt, ArthurLeveris, By their attorneys, |
|  | /s/ C. Max Perlman |
|  | C. Max Perlman (BBO# 630395) |
|  | Sheryl D. Eisenberg (BBO# 641304) |
|  | Sullivan Weinstein & McQuay, P.C. |
|  | Two Park Plaza |
|  | Boston, Massachusetts 02116 |
| Dated: December 12, 2007 | (617) 348-4300 |

### CERTIFICATE OF SERVICE

I, C. Max Perlman, attorney for Defendants, do hereby certify that a copy of the foregoing has been served upon Plaintiff's Counsel, Richard A. Mulhearn, via e-mail and first class mail, on this 12th day of December, 2007.

/s/ C. Max Perlman
C. Max Perlman