## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **PAUL PIZZUTO**<br><br>                              **Plaintiff,**<br><br>**vs.**<br><br>**AIRBORNE EXPRESS, INC., STEVEN CROSSKEN, JOSEPH HAMILTON, GREG SWEATT, AND ARTHUR LEVERIS,**<br><br>                              **Defendants.** | **Civil Action No. 04-12492 GAO** |

### SECOND AFFIDAVIT OF C. MAX PERLMAN

I, C. Max Perlman, hereby depose and state as follows:

1.      I am a principal at the law firm of Sullivan Weinstein and McQuay, P.C. My firm and I represent the defendants in the above-captioned action.

2.      The document set forth as Exhibit A is a true and accurate copy of pages of the transcript of the deposition of the plaintiff, Paul Pizzuto.

3.      The document set forth as Exhibit B is a true and accurate copy of pages of the transcript of the deposition of Mark Sadowski.

4.      The document set forth as Exhibit C is a true and accurate copy of a note from Dr. John V. Chang dated February 7, 2003.

5.      The document set forth as Exhibit D is a true and accurate copy of *Marzano v. Universal Studio, Inc.*, No. Civ. A. 02-10449-GAO, 2003 WL 21696213 (D. Mass. 2003)

6.    The document set forth as Exhibit E is a true and accurate copy of *Rose v. Laskey*, 110 Fed.Appx. 136, 2004 WL 2180787 (1st Cir. 2004).

Sworn to under the pains and penalties of perjury this 12th day of December, 2007.

/s/ C. Max Perlman
C. Max Perlman

<u>CERTIFICATE OF SERVICE</u>

I, C. Max Perlman, attorney for Defendants, do hereby certify that a copy of the foregoing has been duly served upon Plaintiff's Counsel, Richard A. Mulhearn, Esq., at 41 Elm Street, Worcester, MA 01609, via e-mail and first class mail, on this 12th day of December, 2007.

/s/ C. Max Perlman
C. Max Perlman

# **Exhibit A**

# ORIGINAL

1

Volume 1, Pages 1-248

Exhibits: 42-59

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - -

PAUL PIZZUTO

        Plaintiff

vs.                          Docket No. 04-12492 GAO

CROSSKEN EXPRESS, INC., STEVEN

CROSSKEN, JOSEPH HAMILTON, GREG

SWEATT, AND ARTHUR LEVERIS

        Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF PAUL PIZZUTO

Tuesday, June 12, 2007, 10:23 a.m.

Sullivan, Weinstein & McQuay, P.C.

2 Park Plaza, Suite 610

Boston, Massachusetts

- - - - - - -Reporter:  Joan M. Cassidy, RPR, CRR- - - - - - -

jcassidy@fabreporters.com   www.fabreporters.com

Farmer Arsenault Brock LLC

50 Congress Street, Suite 415

Boston, Massachusetts 02109

617.728.4404   Fax 617.728.4403

79

1    Q.   And interfacing with -- or I shouldn't say

2    interfacing -- interacting with people in the

3    public?

4    A.   Oh, yeah, I had no problem interacting with

5    all my customers.  I loved them all.  I loved my

6    job.  It was the internal pressures I was faced with

7    every morning, trying to deal with management that

8    came down on me for whatever reasons they wanted to.

9    You know?  I, to this day, still don't know why I

10   was treated that unfairly, but -- I really can't

11   answer for them.  That's something they are going to

12   have to answer to.

13   Q.   I am going to describe certain abilities,

14   and I'm going to ask you whether they are necessary

15   for performing the essential functions of the job of

16   driver.  You have identified basically what you did

17   as a driver.  I'm going to identify certain

18   abilities, and I want you to tell me whether it's

19   necessary or not.  Okay?

20   A.   Okay.

21   Q.   Do you understand the task?

22   A.   Pretty much, yeah.

23   Q.   Is there anything that's unclear about what

24   I'm asking you to do?

FARMER ARSENAULT BROCK LLC

81

1    A.    Yes.

2    Q.    Work as part of a team?

3    A.    Yes.

4    Q.    Collaborate with other employees?

5    A.    Yes.

6    Q.    Respond appropriately to supervision?

7    A.    Yes.

8    Q.    Have regular contact with other people?

9    A.    Yes.

10   Q.    Perform repetitive tasks?

11   A.    Yes.

12   Q.    Perform varied tasks?

13   A.    Yes.

14   Q.    That's a yes?

15   A.    Cross-training, yes.  Cross-training is

16   what we do.  Say like I just mentioned, if we had to

17   pull freight for another guy, I had to know his

18   route as well as the guy next to me on both sides.

19   That's basically cross-training.

20   Q.    I see.  Plan and perform tasks in an

21   organized manner?

22   A.    Yes.

23   Q.    Remain focused on tasks?

24   A.    Yes.

FARMER ARSENAULT BROCK LLC

82

1    Q.    Manage your time effectively?

2    A.    Yes.

3    Q.    Make independent judgments?

4    A.    Yes.

5    Q.    Supervise or manage others?

6    A.    No.

7    Q.    Perform under stress?

8    A.    Yes.

9    Q.    Be adaptive and flexible?

10   A.    Yes.

11   Q.    Take initiative?

12   A.    No.

13   Q.    Refrain from making threats?

14   A.    Yes.

15   Q.    Refrain from threatening behavior?

16   A.    Yes.

17       Q.    Are there any other functions or abilities

18   than the ones I have just mentioned that you would

19   need to be able to perform the essential functions

20   of the job of driver?

21       A.    No.    I mean, that's pretty much it in a

22   nutshell.

23       Q.    That kind of covers it?

24       A.    Yeah.

# **<u>Exhibit B</u>**

ORIGINAL

Volume 1, Pages 1-85

Exhibits: 113-116

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - -

PAUL PIZZUTO

           Plaintiff

vs.                    Docket No. 04-12492 GAO

CROSSKEN EXPRESS, INC., STEVEN

CROSSKEN, JOSEPH HAMILTON, GREG

SWEATT, AND ARTHUR LEVERIS

           Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF MARC M. SADOWSKY, M.D.

Thursday, August 9, 2007, 3:36 p.m.

New England Neurological Associates

354 Merrimac Street, Building 1

Lawrence, Massachusetts

- - - - - - - Reporter:  PATRICIA A. BUCKO - - - - - - -

www.fabreporters.com

Farmer Arsenault Brock LLC

50 Congress Street, Suite 415

Boston, Massachusetts 02109

617.728.4404   Fax 617.728.4403

8

1      A.   Yes.

2            MS. EISENBERG:   Off the record for one

3      second.

4            (Off the record.)

5            MS. EISENBERG:   Back on.

6            I would just like to ask that the packet

7      of documents that have been provided to Dr. Sadowsky

8      for this review, I would like to ask that these be

9      marked as Exhibit 116.

10           (Marked, Exhibit 116, packet of

11     documents.)

12     Q.   Okay, Dr. Sadowsky, could you tell us what

13     these documents are?

14     A.   These reflect office notes from my meetings

15     with Mr. Pizzuto between 9/15/05 and 7/24/06.

16     Q.   The first set of documents dated September

17     15, 2005, was that the date that you first met with

18     Mr. Pizzuto?

19     A.   Yes.

20     Q.   Okay.

21           And how do these come to be created?

22     Are they transcribed from handwritten notes that you

23     take when you are with the patient?  How is it that

24     this (indication) document comes into existence?

# <u>Exhibit C</u>

*From the Desk Of............*

*Dr. John V. Chang DO, MSc*

*Family Medicine*

To Whom It May Concern:

regarding Paul Pizzuto

He should be able to

return to work 2/24/03

2/17/03

*Salem Family Practice*

*7 Stiles Road*

*Salem, NH 03079*

*Tel: 603 898 4000     Fax: 603 894 6591*

J. Chang
Exhibit No.102
Date: 07/26/07
Reporter: P.A. Bucko

P 00004

# Exhibit D

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21696213 (D.Mass.), 14 A.D. Cases 1181
**(Cite as: Not Reported in F.Supp.2d)**

C Marzano v. Universal Studio, Inc.
D.Mass.,2003.

United States District Court,D. Massachusetts.
Damon J. MARZANO, Plaintiff
v.
UNIVERSAL STUDIO, INC., d/b/a Universal Music
& Video Distribution Corp., Defendant
**No. Civ.A. 02-10449-GAO.**

May 28, 2003.

*MEMORANDUM AND ORDER*
OTOOLE, J.
**\*1** Damon J. Marzano brings this action against his former employer, Universal Studio, Inc. ("Universal"), arguing that he was terminated from his job as mailroom clerk in violation of state and federal law prohibiting discrimination against persons with disabilities. Marzano believes that Universal did not make adequate efforts to accommodate his obsessive compulsive disorder ("OCD"), and that it fired him because of the disorder. Universal now moves for summary judgment. As explained below, the motion will be granted because Marzano has not established that there were any reasonable accommodations that Universal could have made that would have enabled him to perform his job.

A. *Summary of Facts*

Marzano was diagnosed with OCD shortly after graduating from college in 1995. He has been receiving treatment for the disorder from a psychiatrist since 1996. The treatment consists of both medication and therapy. Although Marzano believes that the treatment has helped lessen his symptoms, he still exhibits numerous obsessive compulsive behaviors including "extreme hoarding behaviors, a fear of losing or misplacing things, extensive checking behaviors, and severe bouts of obsessional slowness."*Plf.'s Statement of Facts* ¶ 4.

In March 2000, Marzano began working as a mailroom clerk at Universal's facility in Wakefield, Massachusetts. This was an at-will position. According to Marzano, his job consisted of "receiving packages, disbursing them to where they belong, other mailroom activities such as mail and mailing of packages and then any other kind of busy work such as helper for the field representatives."*Id.* ¶ 8. At some point during his employment, he was also told that he was required to keep the mailroom organized and that he had to order certain supplies. *Id.*

After about three months of working as a mailroom clerk, Marzano had an informal performance review with two of his supervisors, Richard Grobecker and Michael Khouri. Although Marzano thought the review went well, he admits that Grobecker and Khouri informed him that there were some deficiencies in his performance. They told him that he needed to do a better job organizing his work space, and that he needed to stop coming to work late. They also told him that it had come to their attention that he was taking promotional materials, such as CDs and records, out of waste baskets or garbage cans where they had been discarded and giving them away. His supervisors told him that he was not allowed to do this. At no point during the review did Marzano reveal to his supervisors that he was suffering from OCD or that the problems they had identified stemmed from that, or any other, disability.

The record indicates, without genuine dispute, that there were other problems with Marzano's performance as a mailroom clerk. Grobecker states that on one occasion, a package Marzano had signed for was never delivered to the proper recipient. Another time, Marzano left work without permission to attend a promotional event. Marzano's supervisors also continued to comment to him that the mailroom needed to be cleaned up. Marzano does not deny that any of these things occurred, but he claims that they were not serious enough to warrant any discipline. Marzano states that his OCD at times made him very slow at his assigned tasks. For example, he sometimes had a hard time sealing envelopes because he felt the need to check the envelope's contents repeatedly before sealing it.

**\*2** Apparently, the biggest problem with Marzano's job performance was his worsening habit of rifling through the garbage and hoarding his finds. At his deposition, Marzano explained that he has "a very difficult time throwing things away."*Marzano Dep.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21696213 (D.Mass.), 14 A.D. Cases 1181
(Cite as: Not Reported in F.Supp.2d)

at 24. As a result, he felt compelled to go through Universal's main dumpster bin to make sure that nothing was being thrown away that he felt was worth keeping. When asked how much time a day he spent looking through the dumpster, Marzano stated that it would differ depending on how much garbage there was to look through, but that it could take up to an hour a day. He also admitted that his need to go through the garbage bin interfered with his obligation to keep the mailroom and his workspace organized and uncluttered Marzano testified that throughout the day he would feel the need to "pull stuff out of the Dumpster ... and hold it until I had time later on in the evening after my shift to check the stuff and go through it and make sure it was okay, in my mind, to be thrown away.... After a while of that, I basically had stuff everywhere. And it made my workstation very messy; cluttery."*Id.* at 32.Marzano also developed a habit of going into his coworkers' offices, taking their wastebaskets, and dumping the contents into the main dumpster so that he could look through this garbage as well. Emptying trash cans was not among his job responsibilities.

Marzano believes that working for a company that distributed music recordings exacerbated his symptoms. During his deposition he explained that his need to hoard things worsened at Universal "because my obsession lies in-the root of it is kind of a knowledge of all things that are going on musicallly, and just to know everything about the certain scene, the certain bands.... I want to work in the music industry because it's the only thing that I'm really passionate about-maybe a little too passionate about sometimes."*Id.* at 71-72.As a result, during the time he worked at Universal, his symptoms and difficulties performing his job gradually increased.

Although Marzano had been told that he was not to take items out of the garbage and that he needed to organize and clean up the mail room, his habits continued. After working for Universal for approximately six months, his compulsions led to a more serious incident. During one of Marzano's perusals through material from Khouri's wastebasket, he pulled out a draft performance review for another employee. This other employee later saw that Marzano had the draft lying out in plain view, and went to Khouri to complain. In response, Khouri went to discuss the matter with Marzano. According to Marzano, Khouri was very angry and shouted at him. It was at this point that Marzano finally told Khouri that he suffered from OCD, and that his

disorder compelled him to rifle through the garbage. Khouri was taken aback by this information, and walked away. Marzano says that it was a relief to have told Khouri about his condition, and he believes his ability to carry out his job would have improved after this disclosure.

**\*3** Shortly thereafter, Marzano had a talk with Khouri and another supervisor, Margaret Gallagher. During this conversation, Marzano explained his condition, and asked his supervisors to learn more about OCD. He also asked them whether they could work together to come up with a solution. Khouri and Gallagher told Marzano that they did not know what should be done about the situation, and they told him to go home for the rest of the week. Marzano returned to work the following week, but after four days, he was informed that Universal had decided to terminate him.[FN1]

> FN1. The defendants claim that management had decided to terminate Marzano even before the confrontation between Khouri and Marzano. On the record currently before the Court it cannot be said with certainty when the decision to terminate Marzano was made.

### B. *Discussion*

Under both the Americans with Disabilities Act ("ADA") and Massachusetts law, a plaintiff claiming that he was wrongly terminated because of his disability must demonstrate that he could perform the essential functions of his former job either with or without a "reasonable accommodation." *SeeCalef v. Gillette Co.,* 322 F.3d 75, 83 (1st Cir.2003); *Russell v. Cooley Dickinson Hosp., Inc.,* 772 N.E.2d 1054, 1060 (Mass.2002). If the employee needs an accommodation to perform the job, the accommodation must be "reasonable in the sense both of efficacious and of proportional to costs."*Vande Zande v. Wisconsin Dep't of Admin.,* 44 F.3d 538, 543 (7th Cir.1995).

Marzano argues that he was able to perform the job of mailroom clerk satisfactorily without accommodation. However, his own testimony demonstrates otherwise. He was told that he was not permitted to take items from the garbage, yet he was unable to follow this rule. An obligation to refrain from engaging in certain behaviors or activities is as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21696213 (D.Mass.), 14 A.D. Cases 1181
(Cite as: Not Reported in F.Supp.2d)

much a part of a job's essential functions as the adequate performance of assigned tasks. *See e .g.,Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 255-56 (1st Cir.2001) (plaintiff with bipolar disorder yelled at a superior after being instructed to walk away from conflicts with coworkers). Marzano also admitted that his need to hoard his finds interfered with his obligation to keep the mailroom clean and organized, and that his OCD causes tardiness and sometimes makes him very slow at routine mailroom tasks like sealing an envelope.

Marzano has not demonstrated that he could have performed the essential functions of his job even with a reasonable accommodation. "Under the ADA, the plaintiff bears the burden of proving that the defendant could provide a reasonable accommodation for her disability."*Reed,* 244 F.3d at 258. The First Circuit has explained that in order to meet this burden, the plaintiff "needs to show not only that [a] proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances."*Id.* at 259.Here, Marzano cannot meet this burden because he has not suggested any specific accommodations that Universal could have made that would have enabled him to perform in conformity with ordinary workplace rules and requirements. Without any concrete suggestions, neither the Court nor the defendant can evaluate whether there was a reasonable accommodation which would have enabled Marzano to perform his job as a mailroom clerk. *See*also*soid.*(once plaintiff has advanced a facially reasonable accommodation, "the defendant then has the opportunity to show that the proposed accommodation is not as feasible as it appears").

**\*4** The closest Marzano came to advancing some accommodations that Universal could have made was during his deposition. Marzano stated that Universal should have let him come to work "a little later" or be more lenient until his condition improved. *Marzano Dep.* at 74. He also suggested that Universal should have devised a system whereby he could delegate to an intern any tasks that became difficult for him. *Id.* However, Marzano has offered no evidence that either of these accommodations would be either reasonable or particularly effective. While being allowed to arrive "a little later" would have addressed the tardiness problem, Marzano offers no evidence that this accommodation would have eliminated the more serious interference with his working ability

created by his OCD-his checking and hoarding behaviors. The second accommodation, assigning an intern assistant to Marzano who could take over his responsibilities whenever his condition prevented him from doing a task, is not reasonable. The ADA does not require Universal to hire a second person who can do Marzano's job for him. *See*also*Peters v. City of Mauston,* 311 F.3d 835, 845 (7th Cir.2002) (not reasonable to ask employer to hire a helper or to have another employee perform essential functions of plaintiff's job). Looking at the record as a whole, Marzano simply has not advanced sufficient evidence to permit a reasonable juror to conclude that he could perform the essential functions of his job with a reasonable accommodation. *See*LeBlanc v. Great Am Ins. Co.,* 6 F.3d 836, 842 (1st Cir.1993) ("the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party") (citations and internal quotations omitted).

Marzano argues that the defendants' motion for summary judgment should nevertheless be denied because Universal **failed** to **engage** in an **interactive**process to assess what accommodations could have been made for him. However, the First Circuit has stated that while the **failure** to **engage** in such a process at times may violate the ADA, "such an omission [is] 'of no moment' if the record forecloses a finding that the plaintiff could perform the duties of the job, with or without reasonable accommodation."*Kvorjak v. Maine,* 259 F.3d 48, 58 (1st Cir.2001) (quoting *Soto-Ocasio v. Fed. Express Corp.,* 150 F.3d 14, 19 (1st Cir.1998)).*See*also*Russell,* 772 N.E.2d at 1065-66 (no obligation to engage in interactiveprocess where employee did not request a reasonable accommodation). Since Marzano has not identified any reasonable accommodations which might have enabled him to control his compulsions enough to adequately perform his role as a mailroom clerk, Universal's **failure** to **engage** in an **interactive**process is not actionable in this case.

*C. Conclusion*

Marzano has not shown that at a jury trial he could carry his burden of proving that he could perform the essential functions of his job at Universal with or without a reasonable accommodation. Accordingly, Universal's motion for summary judgment (docket no. 11) is GRANTED. The complaint shall be dismissed with prejudice.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21696213 (D.Mass.), 14 A.D. Cases 1181
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

**\*5** It is SO ORDERED.

D.Mass.,2003.
Marzano v. Universal Studio, Inc.
Not Reported in F.Supp.2d, 2003 WL 21696213
(D.Mass.), 14 A.D. Cases 1181

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit E

Westlaw.

110 Fed.Appx. 136
110 Fed.Appx. 136
**(Cite as: 110 Fed.Appx. 136)**

Page 1

**H** This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. First Circuit Rule 36(b). (FIND CTA1 Rule 36.)

United States Court of Appeals,
First Circuit.
Sydney A. ROSE, Plaintiff, Appellant,
v.
Frederick LASKEY, as Commissioner of Revenue,
Commonwealth of Massachusetts
Department of Revenue, Defendant, Appellee.
**No. 03-2168.**

Sept. 29, 2004.

**Background:** Former state employee brought action alleging that his discharge violated Americans with Disabilities Act (ADA). The United States District Court for the District of Massachusetts, Richard G. Stearns, J., entered summary judgment in favor of agency, and employee appealed.

**Holdings:** The Court of Appeals held that:
(1) employee was not deprived of adequate opportunity to develop record, and
(2) employee was not qualified for his job.
Affirmed.

West Headnotes

**[1] Federal Civil Procedure ⟷2553**
170Ak2553Most Cited Cases
Entry of summary judgment in favor of employer in employment discrimination action did not deprive employee of adequate opportunity to develop record, even though employee was proceeding pro se, where employer's summary judgment motion was filed within time prescribed by scheduling order, after discovery had closed, and employee did not move for relief or voice any complaint in his summary judgment opposition. Fed.Rules Civ.Proc.Rule 56(f), 28 U.S.C.A.

**[2] Civil Rights ⟷1218(4)**
78k1218(4)Most Cited Cases

**[2] Civil Rights ⟷1225(3)**
78k1225(3)Most Cited Cases
Employee who threatened violence during exchange with supervisor was not qualified for his job, and thus employee's termination did not violate ADA, despite employee's contentions that he suffered from depression, that he had no intention of carrying out threat, and that threat could have been eliminated through reasonable accommodation, where proposed accommodation was not reasonable, and employee was discharged because of his unacceptable behavior rather than because of any mental impairment. Americans with Disabilities Act of 1990, §§ 101(3), 103(b), 42 U.S.C.A. §§ 12111(3), 12113(b).
***137** Appeal from the United States District Court for the District of Massachusetts, Richard G. Stearns, U.S. District Judge.

Sydney A. Rose on brief, pro se.

Matthew Q. Berge, Assistant Attorney General, and Thomas F. Reilly, Attorney General, on brief, for appellee.

Before SELYA, Circuit Judge, STAHL, Senior Circuit Judge, and LYNCH, Circuit Judge.

PER CURIAM.

We affirm the judgment substantially for the reasons enumerated by the district court in its opinion dated July 10, 2003, adding only the following comments.

**[1]***First.* We decline to consider the non-record "evidence" proffered by plaintiff on appeal. *See, e.g., United States v. Rosario-Peralta,* 175 F.3d 48, 56 (1st Cir.1999) ("It is elementary that evidence cannot be submitted for the first time on appeal."). Plaintiff's contention that he was deprived of an adequate opportunity to develop the record below is mistaken. Defendant's summary judgment motion was filed within the time prescribed by the scheduling order, after discovery had closed. And plaintiff neither moved for relief under Fed.R.Civ.P. 56(f) nor voiced any such complaint in his summary judgment

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

110 Fed.Appx. 136
110 Fed.Appx. 136
(Cite as: 110 Fed.Appx. 136)

opposition. (He sought an extension to file his opposition only because he was "in the process of moving"; no mention was made of difficulties in obtaining his medical records.) That plaintiff may have been unfamiliar with his evidentiary burden at the summary judgment stage provides no basis for appellate relief. *See, e.g., FDIC v. Anchor Properties, 13 F.3d 27, 31* (1st Cir.1994) (noting that litigant's pro se status does not absolve him from compliance with the federal rules). We might add that the outcome of this appeal would be the same even if the newly proffered materials were considered.

[2]*Second.* Plaintiff contends that a genuine issue of material fact remained as to whether a true threat of violence was involved here. Yet he acknowledges making the reference to the Wakefield tragedy at the end of a heated exchange with his supervisor. Whatever plaintiff's ultimate intention, defendant cannot be faulted for taking this threat at face value. In analogous *138 contexts, courts have not hesitated to reject claims under the Americans with Disabilities Act. *See, e.g., Sullivan v. River Valley School Dist., 197 F.3d 804, 813* (6th Cir.1999) ("threatening other employees disqualifies one from a job") (citations and internal quotation marks omitted); *Chapa v. Adams, 168 F.3d 1036, 1039* (7th Cir.1999) ("people who threaten to kill their supervisors are not 'qualified' for [employment] even if their threats are hollow"). As this court has recently stated: "Put simply, the ADA does not require that an employee whose unacceptable behavior threatens the safety of others be retained, even if the behavior stems from a mental disability. Such an employee is not qualified." *Calef v. Gillette Co., 322 F.3d 75, 87* (1st Cir.2003). Such a conclusion is dictated here whether plaintiff is viewed as having the burden of showing he posed no threat to safety in order to establish he was otherwise qualified for the job, *see, e.g., id.* at 87 n. 10;*EEOC v. Amego, Inc., 110 F.3d 135, 142-44* (1stCir.1997), or whether defendant is viewed as having the burden of establishing a "direct threat" as an affirmative defense under 42 U.S.C. §§ 12111(3), 12113(b) and 29 C.F.R. §§ 1630.2(r), 1630.15(b)(2), *see, e.g., Hutton v. Elf Atochem North America, Inc., 273 F.3d 884, 893 & n. 5* (9th Cir.2001). The case on which plaintiff mainly relies in arguing that factual disputes remained, *Whitney v. Bd. of Educ. of Grand County, 292 F.3d 1280, 1286* (10th Cir.2002), did not involve threatened violence and is otherwise distinguishable on its facts.

*Third.* Plaintiff likewise asserts that a trialworthy

issue remained as to whether any such threat could be eliminated through reasonable accommodation. Even if such an inquiry were pertinent in this context, *but cf. Calef,* 322 F.3d at 87 n. 11, it would not avail plaintiff. It was his burden to show, *inter alia,* that he made a specific request for an accommodation that would have enabled him to perform the essential functions of his job. *See, e.g., Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259, 261* (1st Cir.2001). Plaintiff mainly points in this regard to a therapist's letter, delivered to defendant after the incident in question (and introduced for the first time on appeal), indicating that he would benefit from a leave of absence of unspecified length. In *Criado v. IBM Corp., 145 F.3d 437, 443- 44* (1st Cir.1998), we did hold that a leave of absence was a reasonable accommodation for an employee suffering from depression. But no threatening behavior was there involved. And unlike in the case at bar, that employee had "offered evidence tending to show that her leave would be temporary and would allow her physician to design an effective treatment program." *Id.* at 444. In turn, the proposal mentioned by plaintiff below- that he be subjected to regular security screening-not only was untimely but was properly rejected as unreasonable. *See, e.g., Chapa,* 168 F.3d at 1039.

*Fourth.* Plaintiff has also failed to sustain his burden of proof on the two remaining elements of his ADA claim: that he was disabled within the meaning of the Act; and that he was discharged as a result thereof. *See, e.g., Criado,* 145 F.3d at 441. "This circuit has recognized depression as a mental impairment that may constitute, at least in some circumstances, a disability under federal law." *Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 20* (1st Cir.2004). Yet the evidence submitted below failed to substantiate such a diagnosis. And even when the appellate filings are considered, plaintiff has not shown that a major life activity was substantially limited. *See, e.g., Calef, 322 F.3d at 83-86* (discussing this requirement). His main complaint in this regard is about suffering unspecified side-effects *139 from his medication and needing to take sick and vacation leave.

By the same token, there is no genuine dispute about the fact that plaintiff was discharged because of his unacceptable behavior rather than because of any mental impairment. *See, e.g., id.* at 87 (noting that employee "whose unacceptable behavior threatens the safety of others" need not be retained "even if the behavior stems from a mental disability"); *Hamilton v. Southwestern Bell Tel. Co., 136 F.3d 1047, 1052*

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

110 Fed.Appx. 136
110 Fed.Appx. 136

**(Cite as: 110 Fed.Appx. 136)**

(5th Cir.1998) ("The cause of Hamilton's discharge was not discrimination based on [his mental impairment] but was rather his failure to recognize the acceptable limits of behavior in a workplace environment."); *Palmer v. Circuit Court of Cook County,* 117 F.3d 351, 352 (7th Cir.1997) (similar).

*Fifth.* We decline to address plaintiff's First Amendment and due process arguments as they were not properly raised below.

*Affirmed.*

110 Fed.Appx. 136

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.